COURIER–JOURNAL, INC., Appellant,

v.

Hon. Judith McDONALD–BURKMAN,
Judge, Jefferson Circuit Court,
Division Nine, Appellee.

and

Cecil New, Real Party in Interest.

No. 2009–SC–000250–MR.

Supreme Court of Kentucky.

Nov. 25, 2009.

Jon L. Fleischaker, Jeremy Stuart Rogers, Dinsmore & Shohl, LLP, Louisville, KY, Counsel for Appellant.

Judith E. McDonald–Burkman, Jefferson Circuit Judge, Louisville, KY, Counsel for Appellee.

James David Niehaus, Deputy Appellate Defender, Office of the Louisville Metro Public Defender, Angela Marie Rea, Louisville Metro Public Defender, Louisville, KY, Counsel for Real Party in Interest.

Opinion of the Court by Justice CUNNINGHAM.

Cecil New is accused of kidnapping and killing 4–year old Cesar Ivan Aguilar-Cano and leaving his body in a dumpster in the summer of 2007. The criminal case is currently pending in Division Nine of the Jefferson Circuit Court and is styled *Commonwealth v. Cecil New,* Indictment No. 07–CR–003969. A jury trial is scheduled for February 26, 2010.

On January 14, 2008, the Commonwealth filed nearly 3,000 pages of written discovery with the court, pursuant to Jefferson County Local Rule JRP 803(G). This rule requires all criminal discovery documents to be filed with the court and made part of the record. Additionally, on that day, New moved to seal all discovery documents in the court record, claiming that having them open to the public and news media would deprive him of his right to a fair trial.

Appellant, Courier–Journal, Inc., opposing the motion, moved to intervene in the case. A hearing was held on February 6, 2008, and by order dated March 3, 2008, the trial court granted New's motion and sealed the entire discovery filed in the record. Appellant then sought a writ of mandamus or prohibition with the Court of Appeals. On April 7, 2009, the Court of Appeals denied Appellant's petition, and this appeal followed. On appeal, Appellant contends that it has both a First Amendment and common law right of access to the discovery documents, and that both courts erred in their application of relevant case law. According to Appellant, the lower courts' analyses were based upon "pure speculation that the records ... contained 'inflammatory, graphic, and possibly irrelevant material'" that would infringe on New's fair trial rights. For these reasons, Appellant asks this Court to reverse the decision of the Court of Appeals and order that the records be unsealed.

A writ of prohibition is appropriate in two circumstances: (1) when the lower court is acting without or beyond its juris-

diction and there is no adequate remedy through an application to an intermediate court; or (2) when the lower court is acting erroneously within its jurisdiction and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury would result. *Hoskins v. Maricle,* 150 S.W.3d 1, 10 (Ky.2004). Because Appellant maintains that the trial court was acting erroneously within its jurisdiction, the second test applies.

 A right of public access to documents or materials filed in a trial court derives from two independent sources: common law and the First Amendment. *See Roman Catholic Diocese of Lexington v. Noble,* 92 S.W.3d 724 (Ky.2002). Under the common law, there is a long-standing presumption of public access to judicial records. *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). The First Amendment right of access to court records and documents has been based upon extensions of *Press–Enterprise Co. v. Superior Court,* 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) and *Press–Enterprise Co. v. Superior Court,* 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984). However, these rights are not absolute, and this Court has made clear that a trial court has discretionary authority to deny access to its records and files. *Noble,* 92 S.W.3d at 730.

### First Amendment Right of Access

█ In *Noble,* this Court identified the proper right of access analysis under the First Amendment:

The determination of whether a particular document is entitled to a First Amendment right of access is made using a two-pronged inquiry that asks (1) whether the document is one which has been historically open to inspection by the press and public, and (2) 'whether public access plays a significant positive role in the functioning of the particular process in question.'

*Id.* at 733. (Internal citations omitted.)

The United States Supreme Court has held that the "First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally." *Branzburg v. Hayes,* 408 U.S. 665, 684, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972) (internal citations omitted); *See also Lexington Herald Leader Co., Inc., v. Tackett,* 601 S.W.2d 905 (Ky.1980). Therefore, the press's right of access to discovery material under the First Amendment turns on the public's right of access.

Historically, discovery materials were not available to the public or press. *See Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 32–34, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984) ("[R]estraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information."); *Gannett Co. v. DePasquale,* 443 U.S. 368, 396, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979) (Burger, C.J., concurring) ("[I]t has never occurred to anyone, so far as I am aware, that a pretrial deposition or pretrial interrogatories were other than wholly private to the litigants."). While *Seattle Times Co.* addressed the right of access to civil discovery material, the Supreme Court's analysis is equally instructive in the criminal context. Discovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation. *See* Richard L. Marcus, *Myth and Reality in Protective Order Litigation,* 69 Cornell L.Rev. 1, 15 (1983).

█ Appellant, however, maintains that because the discovery documents are filed with the court, as required under local

rule, they become court records and immediately open to the public. We disagree. The fact that the documents are in the custody of the court does not change their character. *See United States v. Noriega,* 752 F.Supp. 1037, 1042 (S.D.Fla.1990) ("[W]hether the transcripts were formally entered on the docket or placed in the court file is not dispositive as to whether they are judicial records to which the press has a right of access."). The purpose of the rule, as stated by the trial court and the Court of Appeals, is to settle disputes as to production. The documents themselves contain no evidentiary value until admitted into evidence during trial or other proceedings.

We reach the same conclusion under the second prong of the analysis. Although Appellant contends that public access to "court records" plays a significant role in the administration of justice, it has failed to show that public access to pretrial *discovery* material, the type at issue here, serves such a role. Indeed, several courts have noted that allowing a right of access to discovery documents would actually hamper the efficient administration of justice. *See Anderson v. Cryovac, Inc.,* 805 F.2d 1, 12 (1st Cir.1986) ("The public's interest [in the discovery process] is in seeing that the process works and the parties are able to explore the issues fully without excessive waste or delay.... [A] public right of access ... would unduly complicate the process."); *United States v. Anderson,* 799 F.2d 1438, 1441 (11th Cir. 1986) ("If it were otherwise and discovery information and discovery orders were readily available to the public and the press, the consequences to the smooth functioning of the discovery process would be severe.").

Simply stated, public access to the discovery process does not play a significant role in the administration of justice. As such, we do not believe that there is a constitutional right of access to discovery material, and the Courier–Journal's position in this regard must fail.

### Common Law Right of Access

Having found that there is no constitutional right of access to discovery material, we now turn to Appellant's contention that a right of access to this material is rooted in the common law.

 Beyond establishing a general presumption that criminal and civil actions should be conducted publicly, the common law right of access includes the right to inspect and copy public records and documents. *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). Documents accessible under this common law right may, however, be "sealed if the right to access is outweighed by the interests favoring non-disclosure." *Noble,* 92 S.W.3d at 731 (internal citations omitted). A court must balance its own inherent right to control access with the public's right of access, and this balancing is left to the discretion of the court. *Id.*

This Court, in *Noble,* outlined a sliding-scale approach to determine how much weight to give the presumption of access to court documents and records. Documents and records that play a great role in determining the substantive rights of parties are afforded the greatest weight, and only compelling reasons can deny access to the public. *Id.* at 732. Those that play only a "minor or negligible role in adjudicating the rights of the litigants" are accordingly offered little weight. *Id.*

*Noble* relied heavily on the decision in *United States v. Amodeo,* 71 F.3d 1044 (2nd Cir.1995), in establishing the sliding-scale approach. In *Amodeo,* the court clearly stated where discovery documents fall on the scale:

Documents that play no role in the performance of Article III functions, *such as those passed between the parties in discovery,* lie entirely beyond the presumption's reach, (citation omitted), and "stand[ ] on a different footing than ... a motion filed by a party seeking action by the court," (citation omitted), or, indeed, than any other document which is presented to the court to invoke its powers or affect its decisions.

*Id.* at 1050. (Emphasis added.)

This view is widely shared among the federal courts as well. *See F.T.C. v. Standard Fin. Management Corp.,* 830 F.2d 404, 408–09 & n. 5 (1st Cir.1987); *Anderson v. Cryovac, Inc.,* 805 F.2d 1, 13 (1st Cir.1986); *In re Alexander Grant & Co. Litigation,* 820 F.2d 352 (11th Cir. 1987); *Hawley v. Hall,* 131 F.R.D. 578 (D.Nev.1990); *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.,* 998 F.2d 157 (3d Cir.1993); *Grove Fresh Distributors, Inc. v. Everfresh Juice Co.,* 24 F.3d 893 (7th Cir.1994); *In re Reporters Committee for Freedom of the Press,* 773 F.2d 1325, 1340–42 & n. 3 (D.C.Cir.1985) (Scalia, J., writing for the District of Columbia Circuit, and Wright, J., dissenting, agree that the common law presumption does not go beyond evidentiary materials used in determining the litigants' substantive rights.).

■ However, even *if a common law* right of access to discovery material exists, the trial court still has "supervisory power over its own records and files," and deference must be given to the trial court's determination after consideration of "the relevant facts and circumstances of the particular case." *Nixon,* 435 U.S. at 598–99, 98 S.Ct. 1306. In the instant case, we cannot say that the trial court's determination was erroneous, or that it will cause Appellant to suffer "great and irreparable injury" if the petition is not granted.

*Maricle,* 150 S.W.3d at 10. This Court has noted that the right to a neutral jury is a sufficiently important interest to outweigh the public and press's right of access. *Lexington Herald–Leader Co., Inc. v. Meigs,* 660 S.W.2d 658, 663 (Ky.1983). This interest is even more important in this case, as New faces the potential penalty of death. Indeed, "[o]ur criminal justice system permits, and even encourages, trial judges to be over-cautious in ensuring that a defendant will receive a fair trial." *Gannett Co. v. DePasquale,* 443 U.S. at 379 n. 6, 99 S.Ct. 2898.

■ As both the trial court and Court of Appeals noted, this case has already received, and likely will continue to receive, widespread publicity. At the present time, no determination has been made as to what portions of the discovery material will be admissible at trial, and the public does not currently know the contents of the discovery material. We agree with both the trial court and the Court of Appeals that sealing the discovery material in this instance is necessary to ensure "inflammatory, graphic, and possibly irrelevant material [is kept] out of public view until a jury is seated." Publicity concerning the discovery material in issue could influence public opinion against New based on information found to be wholly inadmissible at trial. *See Noble,* 92 S.W.3d at 732. We believe a situation such as this is one of those "limited circumstances in which the right of the accused to a fair trial might be undermined by publicity." *Press–Enterprise Co.,* 478 U.S. at 9, 106 S.Ct. 2735. *See also Ashland Pub. Co. v. Asbury,* 612 S.W.2d 749, 752 (Ky.App. 1980) ("The danger to a fair trial from pretrial publicity becomes acute only in those cases which excite widespread public attention, or are very likely to do so, and it is these cases which present the problem to the courts.").

In addition, the trial court's order is narrowly tailored to balance the interests between the press's right of access and New's right to a fair trial. The order explicitly states that "[a]ny item of discovery introduced at a pretrial hearing will not be sealed unless specifically ordered at that time. Once a jury is seated in this case, the discovery will no longer be sealed." Thus, the "public's acquisition of information is delayed but not frustrated." *Id.* at 753. As to the trial court's conclusions that there are no less restrictive alternatives, such as voir dire, limiting instructions, or jury sequestration, we must defer to that court's discretion and its closer familiarity with the nature of the publicity involved.

The Court of Appeals has broad discretion in the issuance of writs of prohibition, and each case must be considered on its own merits. *Hoskins,* 150 S.W.3d at 5. *See also Chamblee v. Rose,* 249 S.W.2d 775, 776 (Ky.1952). In this case, we do not believe that the Court of Appeals abused its discretion in denying Appellant's petition.

We, therefore, affirm the decision of the Court of Appeals.

All sitting. All concur.