John Wesley BRETT, Appellant,

v.

MEDIA GENERAL OPERATIONS, INC., d/b/a WTVQ–TV; and William Stanley, Appellees.

Nos. 2008-CA-000620-MR, 2008-CA-001619-MR.

Court of Appeals of Kentucky.

Jan. 29, 2010.

Discretionary Review Denied by Supreme Court Dec. 8, 2010.

James M. Morris (argued), Sharon K. Morris, Lexington, KY, for Appellant.

Susan C. Sears (argued), Catherine S. Wright, Lexington, KY, for Appellees.

Before LAMBERT and VANMETER, Judges; HARRIS,[1] Senior Judge.

## OPINION

HARRIS, Senior Judge (Assigned).

John Wesley Brett (Brett) appeals from a Fayette Circuit Court summary judgment entered on March 27, 2008, in favor of his former employer, Media General Operations, Inc., d/b/a WTVQ-TV (WTVQ), and William Stanley (Stanley), former general manager of WTVQ.[2] Brett also appeals from orders entered on June 23 and July 16, 2008, awarding costs to WTVQ and Stanley. After a careful review of the record and briefs and consideration of counsels' oral arguments, we affirm.

## THE SUMMARY JUDGMENT ISSUES

We first consider whether the summary judgment was proper. In so doing, we review the trial court's orders *de novo*, *Smith v. Vest*, 265 S.W.3d 246, 248 (Ky. App.2007), subject to these established principles:

Our black-letter law directs that "summary judgment is to be cautiously applied and should not be used as a substitute for trial." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 483 (Ky.1991). "Even though a trial court may believe the party opposing the motion may not succeed at trial, it should not render a summary judgment if there is any issue of material fact." *Id.* at 480. "[W]here the conflict is between inferences to be drawn from undisputed facts, summary judgment may be granted when it is clear that the only reasonable inference is in favor of the moving party." *Harker v. Fed. Land Bank of Louisville*, 679 S.W.2d 226, 229 (Ky.1984).

Designed to be narrow and exacting so as to preserve one's right to trial by jury, summary judgment is nevertheless appropriate in cases where the nonmoving party relies on little more than "speculation and supposition" to support his claims. *O'Bryan v. Cave*, 202 S.W.3d 585, 588 (Ky. 2006). Thus, nonmoving parties are obligated to set forth "at least some affirmative evidence showing that there is a genuine issue of material fact for trial" to withstand a properly supported motion for summary judgment. *Steelvest*, 807 S.W.2d at 482. "The party opposing summary judgment cannot rely on their own claims or arguments without significant evidence in order to prevent a summary judgment." *Wymer v. JH Properties, Inc.*, 50 S.W.3d 195, 199 (Ky.2001).

In 2000, Brett was employed as a reporter for WLEX, a Lexington television station. While working for WLEX Brett supplemented his salary by working as a radio reporter for Metro Traffic. In November 2000, Brett left his position at WLEX to become a reporter/weekend news anchor at WTVQ. Brett executed an employment agreement with WTVQ on December 29, 2000. The employment agreement contained a prohibition against outside employment, but at Brett's behest WTVQ agreed to allow him to continue his traffic reporting job for a term of five months, which it subsequently extended by an additional month. Brett also signed documents evidencing his understanding of WTVQ's personnel policy and procedure

---

1. Senior Judge William R. Harris sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

2. William Stanley was the general manager of WTVQ at all times pertinent to these appeals.

manual, its anti-harassment policy, and its internet access and use policy.

On April 16, 2002, one of Brett's female co-workers reported that Brett inappropriately interjected sex into the workplace, touched her in an unwelcome manner, used degrading gender references, and made crude comments in her presence. The co-worker indicated that she had reason to believe that other female employees had had similar experiences.

After meeting with two other managers, Stanley notified the company's human resources department of the complaint and his intent to investigate. The next day, Stanley interviewed three additional female employees who related similar stories of harassment. Most of the allegations involved inappropriate comments, touching, and sexual innuendo. However, one co-worker alleged that Brett showed her an online picture of a woman performing oral sex on a man. She claimed that Brett told her that he was the man in the picture. The three women expressed fear of retaliation by Brett.

On April 26, 2002, Stanley informed Brett that WTVQ was exercising its right to terminate his employment and giving him 24 hours notice, pursuant to Sections VIII(b)(i) and (c) of his employment contract.[3] WTVQ claims that Brett was informed that his termination was based upon the sexual harassment complaints of four co-workers, as well as corroborating emails and internet records.

Brett contended that he was terminated for other reasons. Brett defended his actions by claiming that he accessed the pornographic website during his work on an assignment about an internet pornography scam. However, later investigation revealed that the reporting assignment oc-

curred after Brett showed a co-worker the pornographic picture.

Following his termination, Brett made minimal inquiries into another reporting position. When he inquired about a possible position at WLEX, the news director informed him that the station did not have any openings. Brett did not seek media related employment until four years later, when he applied for a news anchor position at WKYT. Brett did not receive any response from WKYT concerning his application.

On April 24, 2003, Brett filed suit against WTVQ and Stanley claiming breach of contract and the duty of good faith and fair dealing, defamation, fraud, misrepresentation, contractual interference, and intentional infliction of emotional distress (outrage). On March 27, 2008, the trial court, finding that no genuine issue of material fact existed, granted WTVQ and Stanley's motion for summary judgment, thereby effectively dismissing all of Brett's claims with prejudice. Brett filed a notice of appeal the same day. After WTVQ and Stanley filed a bill of costs and a motion for supplemental judgment, the trial court entered its June 23 and July 15, 2008, orders awarding them costs. Brett then filed his second notice of appeal. This consolidated appeal follows.

## I. Evidentiary Errors

■ Brett's first argument is that the summary judgment was erroneous because it was based upon improper evidence, including documents that were not authenticated, an incomplete deposition, and omitted evidence. We disagree with all of these assertions.

Brett argues that WTVQ and Stanley's proof consisted of unauthenticated documents which were improperly considered

---

**3.** These portions of the employment agree-    ment are quoted *infra.*

by the trial court. Although Brett fails to specifically name any such documents, our review of the record indicates that the majority of the proof consisted of witness depositions that were properly certified and notarized. Because the deposition was a notarized, sworn statement, the depositions were properly admitted under the Kentucky Rules of Evidence (KRE) 902(8). Moreover, Kentucky Rules of Civil Procedure (CR) 56.03 expressly includes depositions among those matters which are proper for a trial court to consider in ruling on a summary judgment motion.

Further, our review indicates that Brett's deposition was complete for the purposes of this action. Brett did not request a re-direct examination. Neither did he file an affidavit to explain, correct, or contradict the testimony which he gave under examination by opposing counsel, which CR 56.03 would have authorized. We find no error in the court's consideration of Brett's deposition.

■ Brett also claimed that WTVQ and Stanley destroyed evidence in order to withhold documents, including managerial working files, correspondence, and policy information. Rather than providing support for this allegation, Brett simply argues that WTVQ and Stanley were required by WTVQ's document retention policy to retain such information for a certain period of time. Each company or organization is free to establish rules and policies to govern their dissemination and destruction of work product. Although WTVQ and Stanley may have violated office policies of document organization and destruction, Brett fails to demonstrate any laws or court orders that were violated by this act, or that the documents were lost or destroyed in anticipation of litigation. Therefore, Brett's claim is without merit.

## II. Breach of Contract and Implied Covenant of Good Faith and Fair Dealing

■ Second, Brett claims that WTVQ and Stanley breached the employment contract and acted in bad faith [4] by terminating his employment without cause and without investigation. The termination provisions in Brett's employment agreement are these:

Basic Terms, Article 5. WTVQ's Termination Without Cause

WTVQ may terminate this [a]greement at any time, at its discretion and without proof of breach by Brett, by delivering to Brett a written notice of WTVQ's decision to terminate not less than 90 calendar days prior to the effective date of such termination. WTVQ may elect in its sole discretion to pay Brett the equivalent of 90 days compensation in lieu of the 90 days notice.

Talent Clauses, Section VIII:

(b) WTVQ shall have the right to terminate the [a]greement upon twenty-four (24) hours notice to Brett if at any time (i) Brett fails to behave with due regard to social conventions and public morals and decency . . .

(c) . . . WTVQ may terminate the [a]greement upon twenty-four (24) hours notice to Brett if Brett commits any of the following acts: . . . using profane or vulgar language or actions while at work. . . .

Reading the above-quoted provisions collectively, it can be seen that Brett's employment was terminable at will under the "Basic Terms" provision, but in that

---

**4.** Every contract contains an implied covenant of good faith and fair dealing. *Farmers Bank & Trust Co. of Georgetown, Kentucky v.*  *Willmott Hardwoods, Inc.,* 171 S.W.3d 4, 11 (Ky.2005).

case he would be entitled to 90 days severance pay or 90 days notice. Brett's employment was also terminable for cause, without any severance pay and with only 24 hours notice, under the "Talent Clauses," which can be fairly characterized as a morals clause. The termination letter makes it abundantly clear that Brett was terminated for cause under the "Talent Clauses" provision of the employment agreement.

■ Brett maintains that he presented the trial court with sufficient evidence to conclude that his termination constituted a breach of contract. "If termination of a contract of employment, whether an executive or of a less responsible position, is justifiable, there is, of course, no legal liability of the employer for breach of contract." *Davies v. Mansbach*, 338 S.W.2d 210, 212 (Ky.1960); *Big Sandy Rural Elec. Coop. Corp. v. Gambill*, 521 S.W.2d 240, 241 (Ky.1974). In the case at hand, Brett was terminated after four women complained that he had sexually harassed them on numerous occasions. The stories were corroborated by emails and company schedules. Nonetheless, Brett claims that WTVQ and Stanley should have conducted a more extensive investigation of the case and given him an opportunity to be heard.

Clearly employees may contract to receive a variety of employment rights, such as the right to a hearing prior to termination, additional notice, and certain investigative procedures. Absent specific contractual provisions concerning these rights, however, WTVQ and Stanley were under no obligation to provide Brett with additional investigation measures or an opportunity to be heard. We recognize that Brett argues a different version of the circumstances leading to his termination, but in light of the evidence against him, we conclude that Brett has failed to present evidence which demonstrates any genuine issue of material fact on his breach of contract claim. Dismissal of that claim was not error.

## III. Fraud

■ Third, Brett argues that WTVQ and Stanley made fraudulent misrepresentations to induce him to enter into the employment contract. Specifically, Brett claims that WTVQ promised him that he would be able to keep his outside employment with Metro Traffic in order to lure him away from WLEX.

■ In order to prove his claim of fraud, Brett must establish the following elements: (a) a material misrepresentation; (b) which was false; (c) which was known to be false or made recklessly; (d) which was made with inducement to be acted upon; (e) which the plaintiff acted in reliance upon; and (f) which caused the plaintiff injury. *United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky.1999).

The record shows that Brett signed his employment agreement with WTVQ on December 29, 2000. However, he signed his outside employment agreement[5] on December 26, 2000, three days prior to the employment contract. Although Brett was placed on notice of WTVQ's policies concerning outside employment, the station allowed Brett to continue his position as a traffic reporter for 5 months. Then WTVQ gave Brett an extension of that grace period. In light of the ample notice given, Brett fails to demonstrate the existence of any genuine issues of material fact on the basic element of fraud, to wit, mate-

**5.** WTVQ required employees to sign a contract agreeing not to seek outside employment while employed at WTVQ.

rial misrepresentation. Summary judgment on Brett's fraud claim was not error.

### IV. Contractual Interference

■ Fourth, Brett claims that WTVQ's misrepresentations and improper termination constituted contractual interference. However, Brett fails to articulate how these two allegations amount to contractual or tortious interference. One is liable for tortious interference with an existing contract when he wrongfully induces a third party not to perform a contract or enter into or continue a business relationship with another. *Carmichael–Lynch–Nolan Advertising Agency, Inc. v. Bennett & Assocs., Inc.,* 561 S.W.2d 99, 102 (Ky. App.1977). Brett's claims do not meet the definition of contractual or tortious interference. Therefore, we find no error in the trial court's summary judgment.

### V. Defamation

■ Fifth, Brett claims that sufficient evidence existed to show that WTVQ and Stanley defamed Brett because his termination was published on the internet and became locally known in the news industry. In order to show defamation, Brett must establish: (1) a defamatory statement; (b) about the plaintiff; (3) which is published; and (4) which causes injury to reputation. *Columbia Sussex Corp., Inc. v. Hay,* 627 S.W.2d 270, 273 (Ky.App.1981).

As the above elements suggest, rumors and innuendo are not enough to constitute defamation. Brett did not specifically describe the alleged defamatory statements, state where they were published, or indicate how WTVQ and Stanley are responsible for the information dissemination. Therefore, Brett has not shown the existence of any genuine issues of material fact which preclude summary judgment on his defamation claim.

### VI. Intentional Infliction of Emotional Distress (Outrage)

■ Brett also alleges that WTVQ and Stanley intentionally inflicted emotional distress by accusing him of immoral acts designed to ruin his reputation, by making false representations concerning outside employment, and by failing to conduct any investigation concerning the harassment allegations. We disagree.

■ In order to prove a claim of intentional infliction of emotional distress, Brett must show that WTVQ and Stanley's intentional or reckless conduct was so outrageous and intolerable that it caused severe emotional distress. *Stringer v. Wal–Mart Stores, Inc.,* 151 S.W.3d 781, 788 (Ky.2004). Brett failed to produce evidence to show that his termination was outrageous or intolerable in the manner that Kentucky law requires to support an action for intentional infliction of emotional distress. *Id.* at 789–92. In addition, our review of the record shows that Stanley did conduct an investigation of the allegations against Brett, abbreviated and imperfect though it was.

### THE AWARD OF COSTS TO WTVQ AND STANLEY

■ The final issue which we address is Brett's appeal from the order which awarded costs to WTVQ and Stanley by granting their motion for supplemental judgment against Brett for those costs.

The trial court's opinion and order which embodied the summary judgment in favor of WTVQ and Stanley was entered on March 27, 2008. It was silent on the subject of recovery of costs. After Brett filed his notice of appeal on the same day, March 27, WTVQ and Stanley filed their bill of costs thirteen days later on April 9, 2008. The trial court subsequently issued

a supplemental judgment awarding costs. Brett objected and filed an Original Action with this Court seeking a writ of prohibition, arguing that the trial court had lost jurisdiction under CR 52.02. The Kentucky Supreme Court ultimately resolved this issue in a memorandum opinion, holding that the trial court, in fact, had jurisdiction under CR 54.04 to award costs. *Brett v. Isaac*, 2009 WL 2707092 (Ky. 2009)(2008-SC-000712-MR).[6]

While the parties at oral argument of this matter downplayed the significance of the Supreme Court's opinion, Brett's argument in this appeal concerning the assessment of costs is the same as he advanced in his Original Action: the trial court erred in making the award since it had lost jurisdiction. The Kentucky Supreme Court's view, however, concerning the trial court's jurisdiction to award costs under CR 54.04 is unmistakable:

> Reading the rule provides the obvious—costs are assessed *after* judgment. Exceptions are to be served within five days and the court is to decide by way of a "supplemental judgment." Clearly, this retained supplemental judgment jurisdiction has nothing to do with the lost jurisdiction to amend or supplement the final judgment. There is no Kentucky case directly on point, probably because the rule is self-explanatory.

*Id.*, slip op. at 4–5.

In a footnote, the Court noted that no time limit was placed in the rule for filing a bill of costs, and implied that the bill of costs should be filed within a reasonable time. *Id.*, slip op. at 5 n. 3. And as noted by the Court, in this instance, WTVQ and Stanley filed their bill of costs within a reasonable time. *Id.* The trial court's supplemental judgment awarding costs is affirmed.

For the reasons stated above, we affirm the Fayette Circuit Court in all respects.

ALL CONCUR.

---

**6.** This opinion became final on September 27, 2009.