**Cindy FIORELLA, Appellant**

v.

**PAXTON MEDIA GROUP, LLC, d/b/a The Owensboro Messenger–Inquirer, Appellee.**

**No. 2012–CA–001093–MR.**

Court of Appeals of Kentucky.

Feb. 21, 2014.

Stephen G. Amato, W. Chapman Hopkins, Lexington, KY, for appellant.

Jeremy S. Rogers Louisville, KY, for appellee.

Before ACREE, Chief Judge; LAMBERT and STUMBO, Judges.

## OPINION

ACREE, Chief Judge:

Cindy Fiorella appeals a May 21, 2012 order of the Woodford Circuit Court which determined that portions of Fiorella's deposition testimony and accompanying exhibits should not be concealed from public inspection. Following careful consideration, we affirm.

## FACTS AND PROCEDURE

In August of 2009, Paula Gastenveld, former President of the Owensboro Community and Technical College (OCTC), filed suit against the Kentucky Community and Technical College System (KCTCS), Fiorella, and a number of other individuals. Gastenveld's complaint set forth claims of defamation, intentional interference with contract, retaliation against a whistleblower, outrageous conduct, and civil conspiracy.

Fiorella, OCTC's Vice President for Workforce and Economic Development, allegedly made defamatory statements about Gastenveld after Gastenveld gave Fiorella a negative performance evaluation and reported to the KCTCS chancellor and an OCTC official that she suspected Fiorella had improperly expended certain college funds. Gastenveld claimed Fiorella's defamatory statements formed the basis of her reassignment, and this she characterized both as retaliatory and as constituting interference with her employment contract.

The parties conducted discovery which included a February 2011 deposition of Fiorella. Fiorella feared that some of the discovery she supplied in her deposition would "be taken out of context by the viewing public, would portray an inaccurate image of Fiorella to the public, and would leave Fiorella with no ability to refute the information." (Appellant's brief, p. 8). According to Fiorella, portions of this discovery "were sealed by agreement of the parties[, Fiorella and Gastenveld]." To effectuate this agreement, the attorneys for the parties encased the subject materials in envelopes, taped the envelopes shut, and stamped "CONFIDENTIAL" in numerous, conspicuous locations on the envelope, before filing the deposition. The trial court did not enter an order approving the "sealing" of this discovery.

Despite the lack of court sanction, the "sealing" was honored.[1] In May of 2011, deprived of access to the sealed discovery, the Owensboro Messenger–Inquirer filed a motion to intervene for the limited purpose of acquiring that access. The Messenger–Inquirer based its motion on the public's right of access as derived from the First Amendment to the United States Constitution and the common law. Following an evidentiary hearing, the circuit court determined the Messenger–Inquirer had a common law right to access the documents, and the motion was granted over Fiorella's objection.

Before the Messenger–Inquirer actually accessed the records, the circuit court dispensed with all of Gastenveld's claims. The May 21, 2012 order from which the instant appeal is taken states that "on October 13, 2011, the Plaintiff [Gastenveld] and Ms. Fiorella entered into an agreed order dismissing the claims against her." However, the record does not include any agreed order dismissing. The record re-

---

1. The record does not reveal whether the court clerk prevented the Messenger–Inquirer from viewing the discovery, or the media simply decided to respect the appearance of the court's sanction. However, that fact is not relevant to our analysis.

flects that, on October 13, 2011, the circuit court entered two orders granting summary judgment in favor of two separately represented, groups of defendants Gastenveld had sued, including Fiorella.[2] Those orders dismissed the claims against the original defendants explicitly on CR 56 grounds, not by an agreed order of dismissal.

Still, the Messenger–Inquirer's intervening complaint against Fiorella remained. The circuit court, therefore, instructed the remaining parties to present arguments addressing whether the newspaper's request for access to the records was now moot because the matter had settled. The circuit court ultimately determined that it was not moot and that the records should be accessible to the public. In part, the court was persuaded by the fact that public funds had been expended in settling the case.

This appeal followed. The appellant asks us to reverse the circuit court's decision that the Messenger–Inquirer has a common law right to access certain discovery materials which Fiorella wishes to shield from public inspection.

## STANDARD OF REVIEW

A decision regarding public access to its records is a matter within the trial court's sound discretion. *Cline v. Spectrum Care Academy, Inc.*, 316 S.W.3d 320, 325 (Ky.App.2010). Absent an abuse of that discretion, we must affirm.

**2.** The October 13, 2011 orders were separate but virtually identical rulings upon two written motions by the two separate groups of defendants for summary judgment under Kentucky Rules of Civil Procedure (CR) 56. The orders appear to have been prepared by the attorneys representing the defendants. The plaintiff, Gastenveld, did not oppose the motions for summary judgment. Both orders include the following language:

## ANALYSIS

We begin our analysis by noting that both Fiorella and the Messenger–Inquirer cite, among others, the same case in support of their respective positions—*Courier–Journal, Inc. v. McDonald–Burkman*, 298 S.W.3d 846 (Ky.2009).

Fiorella cites the case for the Supreme Court's statement that "[w]e disagree" with the contention that "because the discovery documents are filed with the court, as required under local rule, they become court records and immediately open to the public." *Id.* at 849. On the other hand, the Messenger–Inquirer asserts this passage does not mean "that discovery documents in a trial court's record should automatically be sealed." (Appellee's brief, p. 14). On the contrary, says the appellee, in *McDonald–Burkman* "sealing the discovery material [was] necessary to ensure 'inflammatory, graphic, and possibly irrelevant material [is kept] out of public view until a jury is seated.' " *McDonald–Burkman*, 298 S.W.3d at 850. No such circumstances, argues the Messenger–Inquirer, are present in this case.

At the outset, we dispense with some analysis that typically occurs in cases such as this. The parties agree, and we concur, that, unlike *McDonald–Burkman*, there is no First Amendment claim at issue in this case. Their briefs focus on the other analysis most typical in such cases—the right of access by press and public to court

> This cause having come before the Court upon motion of the Defendants ... for summary judgment pursuant to CR 56; there being no opposition; the Court having considered the Motion, and the Court being otherwise sufficiently advised, IT IS HEREBY ORDERED AND ADJUDGED that said Motion be, and the same hereby is SUSTAINED and all of Plaintiff's claims against Defendants ... shall be, and the same hereby are DISMISSED with prejudice.

records based on the common law. However, both parties give short shrift to an elemental and practical step in the analysis, a step typically presumed by the courts—a consideration of the rules of procedure.[3]

The Supreme Court in *McDonald–Burkman* barely made mention of the rules of procedure, but it is clear to this Court that consideration of those rules was integral to the analysis, even if only implicitly so. Support for our conclusion can be found by examining the string-cite of federal cases appearing on page 850 of the opinion. *Id.* When read in the context of those cases, *McDonald–Burkman* provides all the analysis needed in the case now before us. We will start with a more explicit consideration of the role of our own civil rules.

*Impact of rules of procedure on public access to court records*

■ CR 26.03(1) empowers the trial court, upon a showing of good cause, to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," by issuing a protective order denying public access to discovery filed with the court. CR 26.03(1). Logic necessarily leads us to conclude that the reverse also is true—if good cause is not shown, the discovery materials in question should not receive judicial protection and therefore would be open to the public for inspection.[4] *Cf. Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 37, 104 S.Ct. 2199, 2209, 81 L.Ed.2d 17 (1984) (approving trial court's finding, under Washington state's procedural rule[5] which is virtually identical to CR

---

**3.** During oral argument, however, the Messenger–Inquirer did emphasize the role of the rules of procedure in this analysis.

**4.** We note also that other rules presume that materials filed with the court become court records accessible by the public. CR 5.05(1), (3) states: "All papers after the complaint required to be served upon a party shall be filed with the court [and t]he clerk shall endorse upon every pleading and other paper filed with him in an action the date of its filing. Such endorsement shall constitute the filing...." On the other hand, CR 5.06(1) states that, except upon order of the court, certain "documents shall not be filed [including] Interrogatories ... Requests for Production or Inspection ... Requests for Admission ... and Subpoenas[.]" Even then, "[t]he party responsible for service of the document shall retain the original and become the custodian [and] provide access to all parties of record during the pendency of the action." Another rule, CR 7.03, also presumes public access to materials filed with the court clerk; otherwise, it would be unnecessary for that rule to require the attorney or party to redact from any "civil filing" information disclosing "personal data, including an individual's social-security number or taxpayer-identification number, or birth date, or a financial-account number[.]" CR 7.03(1). Also, CR 30.06 requires that any officer taking a depo-

sition "shall deliver the deposition to the clerk of the court ... for filing."

**5.** Washington's Superior Court Civil Rules, CR 26(c), provides:

Protective Orders. Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the county where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters; (5) that discovery be conducted with no one present except persons designated by the court; (6) that the contents of a deposition not be disclosed or be disclosed only in a designated way; (7) that a trade secret or other confidential research,

26.03(1), that good cause justified a protective order prohibiting public access to discovery filed with the trial court, thereby implicitly finding that such discovery would have been available to public inspection absent demonstration of good cause). In other words, if Fiorella were correct that the public did not have access to any discovery materials even when filed with the trial court, there would be no need whatsoever for CR 26.03(1). We must be quick to say, however, that "[t]his presumption of openness for discovery materials not used at trial is grounded only in the [Civil] Rules and does not derive either from a common law or first amendment right of access." *Hawley v. Hall,* 131 F.R.D. 578, 581 (D.Nev.1990) (cited in *McDonald–Burkman,* 298 S.W.3d at 850).

But, Fiorella argues, what are we to make of the fact that *McDonald–Burkman* disagreed with the assertion that "because the discovery documents are filed with the court, as required under local rule, they become court records and immediately open to the public"? *McDonald–Burkman,* 298 S.W.3d at 848–849. On the contrary, said our Supreme Court, "Discovery, whether civil or criminal, is essentially a private process ... to assist trial preparation [and t]he fact that the documents are in the custody of the court does not change their character." *Id.* The clear answer is that the Supreme Court made these statements in the context of its analysis of the media's *First Amendment* argument, not in the context of a civil-rules or common-law argument. In making these statements, our Supreme Court cited *United States v. Noriega,* 752 F.Supp. 1037 (S.D.Fla.1990), which held that "[a]lthough the press and public have a First Amendment right of access to criminal [and civil] trials, the right of access to judicial records is *not of constitutional dimension....*" *Id.* at 1040 (emphasis added). The Court agreed with this statement in *Noriega,* wrapping up its First Amendment analysis in *McDonald–Burkman* by stating "we do not believe that there is a *constitutional right* of access to discovery material, and the Courier–Journal's position *in this regard* must fail." *McDonald–Burkman,* 298 S.W.3d at 849 (emphasis added). As the parties have acknowledged all along, this case, unlike *McDonald–Burkman,* does not involve the *First Amendment constitutional* right of access to discovery material. These statements are not relevant to a common-law analysis.

With regard to the common-law analysis, both the case before us and *McDonald–Burkman* begin at the same point—with rules of procedure. In both cases, discovery was filed because a rule of procedure required it. In *McDonald–Burkman,* "the Commonwealth filed nearly 3,000 pages of written discovery with the court, pursuant to Jefferson County Local Rule JRP 803(G)." *Id.* at 847. Fiorella filed her discovery in compliance with a local rule of the 14th Judicial Circuit, RBSWJC [6] XVIII, which states "All depositions shall be filed with the Circuit Clerk...." [7] From here on, the cases go their separate ways.

development, or commercial information not be disclosed or be disclosed only in a designated way; (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court.

6. Rules of the Bourbon, Scott, Woodford Judicial Circuit.

7. This local rule simply repeats the default requirement contained in CR 30.06 that depositions be filed with the clerk of the court in which the action is pending. The Supreme Court has recognized the authority of local jurisdictions to control their own records by approving local rules that *countermand* CR 30.06, rather than repeat it. Our search of local rules revealed that only five judicial cir-

In *McDonald–Burkman,* on the same day the Commonwealth filed discovery, the criminal defendant, Cecil New, "moved to seal all discovery documents in the court record, claiming that having them open to the public and news media would deprive him of his right to a fair trial" and that motion was granted. *Id.* Not so in Fiorella's case. Although Fiorella could have invoked the civil rules, when the discovery was filed, to ask the court to "make an[ ] order which justice requires to protect" her by sealing the deposition, to "be opened only by order of the court [or] as directed by the court[,]" she did not. CR 26.03(1)(f), (h). Therefore, it was a mere illusion that the Messenger–Inquirer did not have access to the deposition. The fact is, because the court had not issued a protective order, Messenger–Inquirer did have access. The civil rules themselves, not the First Amendment or the common law, created the "presumption of openness" for everything filed with the courts not subject to a protective order. *Hawley,* 131 F.R.D. at 581 (cited in *McDonald–Burkman,* 298 S.W.3d at 850). To elaborate,

> Courts have consistently held that no common law or constitutional right of access to discovery materials exists when a protective order based on a showing of good cause has been granted. *See Anderson v. Cryovac, Inc.,* 805 F.2d 1, 14 (1st Cir.1986); *Public Citizen v. Liggett Group, Inc.,* 858 F.2d 775, 787–89 (1st Cir.1988), *cert. denied,* 488 U.S. 1030, 109 S.Ct. 838, 102 L.Ed.2d 970 (1989).

However, Rule 26(c) and Rule 5(d) of the Federal Rules of Civil Procedure [the sources of our own CR 26.03 and CR 5.05] dictate that discovery materials are presumptively open to public inspection, unless a valid protective order directs otherwise. *In Re Agent Orange Prod. Liab. Litig.,* 821 F.2d 139, 145 (2d Cir.), *cert. denied,* 484 U.S. 953, 108 S.Ct. 344, 98 L.Ed.2d 370 (1987). This presumption of openness for discovery materials not used at trial is grounded only in the Federal Rules [or the Kentucky Rules of Civil Procedure] and does not derive either from a common law or first amendment right of access.

*Id.*

█ For this reason, we conclude as other courts have concluded, that once filed with the courts, "the fruits of pretrial discovery are, *in the absence of a court order to the contrary,* presumptively public." *San Jose Mercury News v. United States District Court,* 187 F.3d 1096, 1103 (9th Cir.1999) ((interpreting Federal Rules of Civil Procedure (Fed.R.Civ.P.) 26(c), the federal counterpart of CR 26.03)(emphasis added)). This holding is in no way inconsistent with *McDonald–Burkman* because, in that case, the discovery to which the media sought access *was* sealed by court order immediately upon filing.

*Common law access to discovery subject to a protective order*

█ Concluding that Fiorella's deposition was, in fact, publicly accessible based on the presumption of openness created by the civil rules does not end the analysis in

---

cuits have adopted a local rule countermanding CR 30.06. Those circuits are the 12th Judicial Circuit (Henry, Oldham and Trimble Circuit Courts)(Local Rules of the Twelfth (12th) Judicial Circuit Rule 2.6(A)); 16th Judicial Circuit (Kenton Family Court)(RKFC 12), 21st Judicial Circuit (Rowan, Montgomery, Menifee and Bath Circuit Courts)(R21C– 140); 22nd Judicial Circuit (Fayette Circuit Criminal and Civil Courts)(RFCC Rule 23); and the 53rd Judicial Circuit (Anderson, Shelby and Spencer Circuit Courts)(LCRP–53–10). Each of these local rules is nearly identical and they begin with the sentence: "Originals of depositions shall not be filed in the Court record."

this case. That is because, notwithstanding that no protective order was ever entered in this case, the parties presumed, and the circuit court proceeded as though, Fiorella *had* established good cause for sealing the deposition and that a protective order was in place. Such circumstances affect the weight to be given the presumption of openness. That is, where no protective order is in place, the presumption of openness is, effectively, absolute; but where discovery is subject to a protective order, or where the circuit court treats the discovery as though it is,[8] then "the weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the ... courts." *U.S. v. Amodeo*, 71 F.3d 1044, 1049 (2nd Cir.1995). And that gets us back to *McDonald–Burkman* because our Supreme Court was guided in that case by *Amodeo*, just as it was guided when deciding *Roman Catholic Diocese of Lexington v. Noble*, 92 S.W.3d 724 (Ky.2002).

Before discussing *Amodeo*, we note that the remainder of our analysis presupposes, as the circuit court presupposed, that the documents in question were sealed despite the fact that the "sealing" was by agreement and not by a protective order as the rule provides. We have thus moved from the presumption of access to court documents established by the rules of civil procedure, to the common law right of access to documents placed under seal by the court.

In *Amodeo*, the Second Circuit stated that "the weight to be given the presump-

tion of access" to documents placed under seal by the court is determined by where a particular document falls along "a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Amodeo*, 71 F.3d at 1049. Another Second Circuit case, *Lugosch v. Pyramid Co. of Onondaga*, explaining *Amodeo's* principles in the context of discovery, stated that "the weight of the presumption" favoring public availability of discovery used to support motions, such as motions for summary judgment, "is of the highest[.]" *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 123 (2nd Cir. 2006). Although Fiorella argues that her case was dismissed as settled by agreed order, the record does not support that argument. As we have noted, the case was actually decided on the basis of summary judgment motions and the court's rulings on those motions were clearly summary judgments. In the end, and in this case only, we do not find that the distinction affects the outcome.

In addition to reasoning that materials relied upon in deciding motions carries the greatest weight in presuming public access, *Lugosch* also made clear that this presumption, no matter how weighty, may be overcome by "competing considerations" including but not limited to "the privacy interests of those resisting disclosure," *id.* at 120 (quoting *Amodeo*, 71 F.3d at 1049–50), and the need "to preserve higher values." *Id.* (quoting *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir.1987) (internal quotation marks omitted)).

---

**8.** We see nothing wrong in parties' joint motions to obtain protective orders. However, we discourage parties from attempting to "seal" materials filed with the court by their own agreement alone, without the court's approval in the form of a protective order. A circuit court would be well within its authority to deem such efforts ineffective and, perhaps, even a usurpation of the court's authority under the civil rules. Neither the circuit court's decision in this case to refrain from doing so, nor this Court's analysis here, should be taken as sanctioning any such future course.

This balancing act is referred to as the "sliding scale." *Noble*, 92 S.W.3d at 732. Reiterating then, we have on one end of the scale "documents and records that play an important role in determining the litigants' substantive rights[,]" to which access may be denied only for very compelling reasons. *Id.* On the other end of the scale are "documents and records that play only a minor or negligible role in adjudicating the rights of the litigants...." *Id.* Significantly less compelling reasons may justify their exclusion from public view. *Id.*

Typically, the public's inspection of discovery materials that are neither used at trial nor in support of a pretrial motion does not meaningfully enable the public to act as a check on the exercise of judicial authority. *McDonald–Burkman*, 298 S.W.3d at 850; *Noble*, 92 S.W.3d at 732. Such materials are more likely to "come within a court's purview solely to insure their irrelevance[,]" *Amodeo*, 71 F.3d at 1049, in which case a protective order may be appropriate, in the court's discretion, to keep the public from examining them. The discovery in the case before us has attributes which cause us to doubt that they fall on this end of the scale.

■ First, and accepting Fiorella's assertion that the case was settled and dismissed on that basis, the Supreme Court has instructed us that when a settlement agreement involves the expenditure of public funds, it "weigh[s] in favor of requiring the record to be open to public inspection." *Courier–Journal and Louisville Times Co. v. Peers*, 747 S.W.2d 125, 130 (Ky.1988). Because Gastenveld's settlement with Fiorella and other defendants involves the payment of public funds, the public interest in accessing the materials is more than minimal.

Second, we still cannot ignore the fact that the record does not show the case was dismissed as settled, but on the basis of successful summary judgment motions. Our rules regarding summary judgment are clear; CR "56.03 expressly includes depositions among those matters which are proper for a trial court to consider in ruling on a summary judgment motion." *Brett v. Media General Operations, Inc.*, 326 S.W.3d 452, 457 (Ky.App.2010). When the circuit court granted summary judgment, it was aware of this discovery deposition, and should have, in compliance with the rule, considered it. Whether the court did, in fact, consider it such that the deposition played a role in the court's Article III function is known only to the circuit judge. Certainly, though, we cannot say that it did not.

Third, presuming the summary judgments granted were merely an artifice to accomplish a resolution of the legal action upon the basis of an agreed settlement, it remains that the case was settled after this deposition (and other discovery) was taken and, therefore, there is the possibility that the discovery was a factor both in the decision to settle and in the court's decision to accept the parties' decision to dispense with the case based on the settlement. Even the mere possibility that the court considered the information for which the implementation or continuation of a protective order is sought militates in favor of public access.

■ While these factors weigh in favor of public access, this does not end the analysis. As *McDonald–Burkman* states, "even if a common law right of access to discovery material exists, the trial court still has 'supervisory power over its own records and files,' and deference must be given to the trial court's determination after consideration of 'the relevant facts and circumstances of the particular case.'" *McDonald–Burkman*, 298 S.W.3d at 850 (quoting *Nixon v. Warner Communica-*

*tions, Inc.,* 435 U.S. 589, 598–99, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978)). In this context, consideration must be given to "competing considerations" including but not limited to "the privacy interests of those resisting disclosure," *Lugosch,* 435 F.3d at 120 (quoting *Amodeo,* 71 F.3d at 1049–50), and the need "to preserve higher values." *Id.* (quoting *In re New York Times Co.,* 828 F.2d 110 at 116 (internal quotation marks omitted)).

Fiorella has asserted no constitutional right which would be jeopardized by making the materials publically available. Nor has she identified a higher value in need of preserving that would outweigh the common law right of public access to the judicial process that would assist in assuring its integrity.

We are not without sympathy for Fiorella. It appears that if the matter had gone to trial, her negative performance evaluation and placement on a performance improvement plan could have played a role in determining the parties' substantive rights. Gastenveld's complaint asserts that her purportedly retaliatory reassignment and Fiorella's alleged interference with Gastenveld's employment contract and issuance of defamatory statements arose in response to the performance evaluation and performance improvement plan. The veracity of those claims would have turned, at least in part, upon whether the evaluation and plan were the product of Gastenveld's competent and truthful assessment of Fiorella's performance. Fiorella's defense was based on the assertion they were not. But any impact these matters had on the parties' substantive rights, of course, is diminished because the claims against Fiorella were dispatched without a trial.

It also bears noting that sealing limited portions of Fiorella's deposition and the accompanying exhibits will not be an effective means of shielding the information. Much of the information Fiorella seeks to seal is either alluded to or identified outright in materials she has not asked to be sealed, most of it in her own deposition testimony. This information includes the fact of her negative evaluation, some of Gastenveld's specific concerns about Fiorella's performance, and the focus of her performance improvement plan. It appears to this Court that Fiorella stands to gain very little by sealing the documents.

The materials in question "fall in between [the] two extremes" of "documents . . . that play an important role in determining the litigants' substantive rights" and "documents . . . that play only a minor or negligible role in adjudicating the rights of the litigants[.]" *Noble,* 92 S.W.3d at 732. Whether to make them available for public access is truly a matter of the circuit court's "exercise of judgment and discretion." *Id.* (citation omitted).

We have considered Fiorella's urging that we accept a bright-line test that would keep all discovery materials off the sliding scale altogether, whether filing the discovery is compelled by a procedural rule or exempted from it.[9] Because we conclude that, absent a protective order, the *civil rules* establish a presumption of openness, we interpret this argument as referring to discovery that *is* subject to a protective order. With that understanding, we note *McDonald–Burkman appears* to support

---

**9.** We acknowledge the meaningful practical effect on public access that results from the disparity between most Kentucky circuit courts and those that have adopted a rule requiring that depositions not be filed. That is a matter to be addressed between the Supreme Court and circuit courts seeking approval of a local rule countermanding the requirement of CR 30.06.

Fiorella's position. As the Supreme Court noted, its prior case of

> *Noble* relied heavily on the decision in *United States v. Amodeo*, 71 F.3d 1044 (2nd Cir.1995), in establishing the sliding-scale approach. In *Amodeo*, the court clearly stated where discovery documents fall on the scale:
>
>> Documents that play no role in the performance of Article III functions, *such as those passed between the parties in discovery*, lie entirely beyond the presumption's reach, (citation omitted), and "stand[ ] on a different footing than ... a motion filed by a party seeking action by the court," (citation omitted), or, indeed, than any other document which is presented to the court to invoke its powers or affect its decisions.

298 S.W.3d at 849–50 (Ky.2009) (emphasis added by the Supreme Court in *McDonald–Burkman*) (referencing *Noble*, 92 S.W.3d at 732, but quoting directly from *Amodeo*, 71 F.3d at 1050).

The strong language of *McDonald–Burkman* does appear to place *all* discovery materials beyond the public's reach. That, however, would be too broad a reading of *McDonald–Burkman*.[10] It is essential to an understanding of that case to recognize that the discovery material to which public access was sought was, like the case before us now, actually filed with the trial court pursuant to a local rule of court. *McDonald–Burkman*, 298 S.W.3d at 847 ("Commonwealth filed nearly 3,000 pages of written discovery with the court, pursuant to Jefferson County Local Rule JRP 803(G)."). Clearly then, when *McDonald–Burkman* refers to discovery material "passing between the parties," the Court was referring to discovery material that is never filed, but remains in the files of the parties' attorneys. If we were to take the Court's statement in this regard literally, ignoring all natural and obvious inferences gleaned from reading the case as a whole, then *all* discovery material, whether filed with the court or not and whether subject to a protective order or not, would "lie entirely beyond the presumption's reach." *Id.* at 850. If this had actually been the holding in *McDonald–Burkman*, there would have been no reason for the Supreme Court to continue its analysis by applying the sliding scale, which it obviously did apply to the 3,000 documents filed in compliance with the procedural rules. *Id.* at 851 ("trial court's order is narrowly tailored to balance the interests between the press's right of access and New's right to a fair trial"). In summary, *McDonald–Burkman* holds that discovery materials which the parties file with the trial court, *even when a court rule compels the filing*, and which are subject to the court's protective order, are nevertheless subject to the sliding-scale analysis first embraced in Kentucky in *Noble*.[11]

---

**10.** Among the cases of *McDonald–Burkman, Noble,* and *Amodeo,* only the most recent case, *McDonald–Burkman,* applied the sliding scale specifically to discovery. *Noble* dealt with the sealing of the entire record and the sealing of allegations stricken from a complaint. *Noble,* 92 S.W.3d at 727–28. *Amodeo* addressed public access to "a sealed investigative report filed with the district court [by] a Court Officer appointed pursuant to a consent decree to investigate allegations of corruption in Local 100 of the Hotel Employees & Restaurant Employees International Union AFL–CIO[,]" one of the parties in the underlying lawsuit. *Amodeo,* 71 F.3d at 1047.

**11.** In support of her argument, Fiorella relies heavily on certain language from *McDonald–Burkman* which does not directly bear on the issues before us. As she notes, the Supreme Court did hold that "public access to the discovery process does not play a significant role in the administration of justice." *McDonald–Burkman,* 298 S.W.3d at 849. However, the Court made that statement in the context of a First Amendment analysis, which

## CONCLUSION

We cannot conclude the circuit court abused its discretion in permitting public access to the documents. Fiorella has identified no reason so compelling that we must overcome our deference to the circuit court's control of its own records and dis-

turb the order on appeal. Therefore, we affirm.

ALL CONCUR.

"asks (1) whether the document is one which has been historically open to inspection by the press and public, and (2) whether public access plays a significant positive role in the functioning of the particular process in question." *Id.* at 848 (citations and quotations omitted). The Supreme Court correctly did not apply *these* concepts as part of its com-

mon-law analysis; it used the sliding-scale analysis to assess the weight of the presumption of access under the common law. Since the common-law argument is the only one before us, we follow *McDonald–Burkman* and decline to apply concepts applicable only to a First Amendment analysis.