**In the Matter of Subpoena Duces Tecum Directed to the Honorable Kevin M. DILLON, District Attorney of Erie County.**

**Civ. No. 92–13A.**

United States District Court,
W.D. New York.

Feb. 20, 1992.

John J. DeFranks, J. Michael Marion, Asst. Erie County Dist. Attys. (Kevin Dillon, Erie County Dist. Atty., of counsel), Buffalo, NY.

Russell P. Buscaglia, Asst. U.S. Atty. (Dennis C. Vacco, U.S. Atty., W.D.N.Y., of counsel), Buffalo, NY.

## DECISION AND ORDER

ARCARA, District Judge.

Presently before the Court is a motion to quash a subpoena *duces tecum*, pursuant to Fed.R.Crim.P. 17, filed by Kevin M. Dillon, District Attorney for Erie County, New York. The District Attorney's motion seeks an order from this Court quashing a federal grand jury subpoena for state grand jury records. The parties were given an opportunity to brief and argue their respective positions. After reviewing the submissions of the parties and hearing argument from counsel, the Court denies the District Attorney's motion to quash the subpoena.

## BACKGROUND

A federal grand jury investigation is currently being conducted regarding an incident which occurred on March 8, 1990 in the Main Place Mall, Buffalo, New York, involving the arrest of Mark Aiken and Steven Johnson by officers of the Buffalo Police Department. Specifically, a federal grand jury is investigating allegations that certain officers of the Buffalo Police Department violated federal criminal civil rights laws during and after the arrest of Mr. Aiken and Mr. Johnson.[1]

The District Attorney's Office prosecuted Mr. Aiken and Mr. Johnson on numerous state misdemeanor charges arising from this incident. During the state trial, only two of the six or more officers who were either involved in or witnessed the incident in question actually testified. Consequently, the state trial shed little light on the officers' versions of the allegations that are the focus of the federal criminal civil rights investigation.

Following the conclusion of the state trial, the District Attorney's Office presented the case to an Erie County grand jury that considered whether the officers' actions during and after the arrest of Mr. Aiken and Mr. Johnson constituted violations of state law. The United States, which was then conduct-

---

1. The background and focus of the federal grand jury investigation is set forth in greater detail in an *in camera* submission of facts surrounding the federal grand jury investigation submitted by the United States.

ing its own investigation, delayed taking any action in the matter in order to prevent interference with the state investigation. The Erie County grand jury declined to return criminal charges against any of the police officers. As a result, the state investigation into the police officers' conduct concluded in approximately November, 1990.

When the District Attorney's Office concluded its investigation, the United States conducted an independent review of the matter and concluded that a federal grand jury investigation was warranted. After further investigation, evidence was presented to a federal grand jury in October, 1991.

The United States claims that the federal grand jury investigation has reached a logjam because of the refusal of the police officers to cooperate with the Federal Bureau of Investigation ("FBI"). Moreover, none of the officers who are most seriously implicated in the investigation submitted any written reports regarding the alleged incident, nor did most of the officers who were present and should have witnessed the incident. Thus, the United States argues that reviewing the transcripts and tapes of the state grand jury testimony of the police officers is the only way that it will be able to learn the officers' versions of what happened.

The United States initially attempted to obtain the state grand jury material through informal means. When these efforts failed, a grand jury subpoena was issued to the District Attorney's Office on October 25, 1991 for the production of the grand jury transcripts or tapes of all witnesses who testified in this matter before the Erie County grand jury. At the request of the District Attorney's Office, the return date was delayed until January 8, 1992, in an effort to facilitate the resolution of this matter.

When further efforts to resolve the matter failed, the District Attorney filed the present motion to quash, raising four objections to the production of the state grand jury material. First, the District Attorney argues that compliance would be unreasonable because it would force him to violate state law relating to grand jury secrecy. Second, he argues

that the subpoena was served upon the wrong party. Third, the District Attorney contends that compliance would be unreasonable because it would violate policies of comity. Finally, he contends that the subpoenaed grand jury records are privileged.

## DISCUSSION

 It is well-established that a federal grand jury is to be afforded wide latitude in conducting its investigation. *See United States v. R. Enters., Inc.*, 498 U.S. 292, 297–98, 111 S.Ct. 722, 726, 112 L.Ed.2d 795 (1991); *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). "A grand jury investigation 'is not fully carried out until every available clue has been run down and all witnesses examined in every proper way to find if a crime has been committed.'" *Branzburg v. Hayes*, 408 U.S. 665, 701, 92 S.Ct. 2646, 2667, 33 L.Ed.2d 626 (1972) (quoting *United States v. Stone*, 429 F.2d 138, 140 (2d Cir.1970)); *In re Grand Jury Subpoena for the Prod. of Certain New York State Sales Tax Records*, 382 F.Supp. 1205, 1206 (W.D.N.Y.1974) (quoting *Stone*, 429 F.2d at 140). In accordance with its broad mandate to investigate possible criminal activity, a federal grand jury has few limitations placed on its subpoena powers. *R. Enters.*, 498 U.S. at 297–98, 111 S.Ct. at 726. "A grand jury 'may compel the production of evidence or the testimony of witnesses as it considers appropriate, and its operation generally is unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials.'" *Id.* (quoting *Calandra*, 414 U.S. at 343, 94 S.Ct. at 617). The only restrictions that have been placed upon the grand jury concern reasonableness and privileges. A grand jury subpoena may not be unreasonable or oppressive, and it may not violate a constitutional, common law or statutory privilege. *Branzburg*, 408 U.S. at 688, 92 S.Ct. at 2660; Fed.R.Crim.P. 17(c). Grand jury subpoenas are presumed to be reasonable and the party seeking to quash the subpoena bears the burden of showing that compliance would be unreasonable or oppressive. *R. Enters.*, 498 U.S. at 300–02, 111 S.Ct. at 728.

In this case, the District Attorney contends that compliance with the subpoena would be unreasonable. In order to meet his heavy burden of showing that compliance with the subpoena would be unreasonable or oppressive, the District Attorney must prove that (1) "there is no reasonable possibility that the category of materials the Government seeks will produce information relevant to the general subject of the grand jury's investigation;" or (2) the subpoena is too indefinite; or (3) compliance would be overly burdensome. *Id.* After applying these tests to the instant case, the Court finds that the District Attorney is unable to rebut the presumption that the federal grand jury subpoena is reasonable.

■ Regarding the relevancy question, the United States has set forth in some detail, both in its motion papers and in its *in camera* submission, the reasons underlying the need for the state grand jury records. The United States has been unable to obtain the information contained in the grand jury records from other sources because the police officers have been unwilling to cooperate with the investigation. Accordingly, the Court finds that the statements of the police officers and other witnesses who testified before the state grand jury are relevant and necessary to the federal grand jury investigation.

It does not appear that the District Attorney challenges the subpoena as being too indefinite or overly burdensome. The Court notes that the subpoena is discreet and calls for the production of specific material stemming from a particular state grand jury investigation. Thus, the subpoena is sufficiently definite. Further, the subpoena does not call for the production of an unreasonable amount of documents. Consequently, producing the requested material would require minimal effort on the part of the District Attorney's Office and therefore would not be overly burdensome.

The District Attorney argues that compliance with the subpoena would be unreasonable because it would place him in a position where he would be violating state law provisions relating to grand jury secrecy. Specifically, the District Attorney argues that N.Y.Crim.Proc.Law § 190.25, subd. 4, requires that state grand jury materials be kept secret and therefore prohibits him from turning over the subpoenaed grand jury records to the United States. He contends that the only way the United States can gain access to these materials is to file a motion in state court pursuant to N.Y.Crim.Proc.Law § 190.25, subd. 4. The Court finds this argument without merit.

■ Federal courts have consistently held that state statutes which preclude disclosure of records to the general public cannot be used to prevent federal grand juries from obtaining the records through a subpoena. The cases of *In re Grand Jury Subpoena for New York State Income Tax Records,* 468 F.Supp. 575 (N.D.N.Y.), *appeal dismissed,* 607 F.2d 566 (2d Cir.1979), and *In re Grand Jury Subpoena for the Prod. of Certain New York State Sales Tax Records,* 382 F.Supp. 1205 (W.D.N.Y.1974), are particularly relevant to the case at hand. Both cases involved federal grand jury subpoenas issued to officials of the New York State Department of Taxation for the production of certain tax records. The petitioners moved to quash the subpoenas on the grounds that compliance would be in violation of certain secrecy provisions of New York State tax laws. These laws are very similar to N.Y.Crim.Proc.Law § 190.25, subd. 4, which the District Attorney relies on in his motion. The courts in these cases explicitly rejected the argument that compliance was unreasonable because it would force the state officials to violate state law secrecy provisions. The courts ruled that the Supremacy Clause must prevail over the state nondisclosure provisions. As the court in *In re Grand Jury Subpoena for New York State Income Tax Records* stated:

> The Supreme Court has several times indicated that, by virtue of the supremacy clause, state legislation must yield whenever it comes into conflict with an Act of Congress or the superior authority of the Constitution. Thus, inasmuch as the fed-

eral grand jury is a product of the Fifth Amendment and its powers, as a result of its long history and specific Congressional attention, the conflict between state confidentiality provisions and Congressional or constitutional investigatory powers has resulted in enforcement of federal grand jury subpoenas despite state statutes which would otherwise prohibit compliance. *In re Grand Jury Subpoena for New York State Income Tax,* 468 F.Supp. at 577 (citations omitted). Courts in other Circuits, relying on the Supremacy Clause, have similarly rejected claims from state officials that compliance with a federal subpoena would force them to violate state confidentiality laws. *See, e.g., In re Special April 1977 Grand Jury,* 581 F.2d 589, 593 n. 3 (7th Cir.), *cert. denied,* 439 U.S. 1046, 99 S.Ct. 721, 58 L.Ed.2d 705 (1978); *Carr v. Monroe Mfg. Co.,* 431 F.2d 384, 388 (5th Cir.1970), *cert. denied,* 400 U.S. 1000, 91 S.Ct. 456, 27 L.Ed.2d 451 (1971); *In re 1980 United States Grand Jury Subpoena Duces Tecum,* 502 F.Supp. 576, 579–80 (E.D.La.1980); *United States v. Grand Jury Investigation,* 417 F.Supp. 389, 393 (E.D.Pa.1976). Thus, the case law clearly establishes that state law provisions relating to grand jury secrecy do not preclude a federal grand jury from obtaining state grand jury records pursuant to a subpoena.

■ The District Attorney further argues that the grand jury subpoena was not served upon the proper party. Specifically, the District Attorney contends that pursuant to the state grand jury secrecy law, N.Y.Crim. P.Law § 190.25, subd. 4, the state court has the ultimate and exclusive control over the subpoenaed grand jury material and, therefore, is the actual custodian of the grand jury records. Thus, the District Attorney argues that the grand jury subpoena should have been served on the presiding state court judge rather than the District Attorney. The Court disagrees.

A custodian of records is the person or entity who is in actual possession of the documents at the time the subpoena is issued. *In re Grand Jury Impaneled Jan. 21, 1975,* 541 F.2d 373, 377 (3d Cir.1976) (citations omitted). In order to testify compe-

tently as a records custodian, a witness must be able to verify the authenticity and completeness of the requested documents.

In this case, the District Attorney does not dispute the fact that his office possesses the requested grand jury material, nor does he deny that the grand jury materials were generated as a result of an investigation conducted by his office. Accordingly, the District Attorney's office is the sole entity that can competently testify as to the authenticity and completeness of the requested material. The presiding state court judge does not possess the subpoenaed materials nor would he or she have any knowledge concerning the authenticity or completeness of the grand jury records. Thus, the Court finds that the District Attorney's Office is the custodian of the state grand jury records and is therefore the proper party to be served with the subpoena.

The District Attorney also contends that compliance with the federal grand jury subpoena would be unreasonable because it would violate policies of comity. Specifically, the District Attorney contends that, just as the federal government has an interest in protecting the secrecy of federal grand jury material, the state has an interest in protecting state grand jury material from disclosure. Thus, the District Attorney argues that, in order to show proper deference to the State's interest in the confidentiality of the grand jury records, the United States should be required to move initially for disclosure before the presiding state court judge. The Court finds that no such requirement exists.

■ The Court recognizes that "policies of comity and federalism require some deference to the objective sought to be achieved by state confidentiality provisions." *In re Grand Jury Subpoena for New York State Income Tax Records,* 468 F.Supp. at 577. The basic purposes of the state grand jury secrecy laws in question are: (1) to prevent an accused from escaping before he is indicted; (2) to prevent tampering with witnesses; and (3) to protect an accused person who is not indicted from unwarranted exposure. *People v. McAdoo,* 45 Misc.2d 664, 257 N.Y.S.2d 763, *aff'd,* 51 Misc.2d 263, 272

N.Y.S.2d 412, *cert. denied,* 386 U.S. 1031, 87 S.Ct. 1479, 18 L.Ed.2d 592 (1967).

In this case, compliance with the federal grand jury subpoena will not subvert New York's interest in maintaining the secrecy of grand jury proceedings because federal grand jury proceedings are also conducted secretly. The secrecy requirements of Fed. R.Crim.P. 6(e), will adequately ensure that none of the purposes of the state grand jury secrecy laws are undermined by compliance with the federal grand jury subpoena. *See In re New York Grand Jury Subpoena for State Income Tax Records,* 468 F.Supp. at 577–78; *see also United States v. Field,* 532 F.2d 404, 407–08 (5th Cir.1976), *cert. denied,* 429 U.S. 940, 97 S.Ct. 354, 50 L.Ed.2d 309; *In re Grand Jury Empaneled Jan. 21, 1975,* 541 F.2d at 377–78.

Moreover, it is important to note that comity is a policy which must be balanced against "the necessity of thorough grand jury investigations into violations of federal law." *In re Grand Jury Subpoena for New York State Income Tax Records,* 468 F.Supp. at 577. In this case, the subpoenaed documents are necessary to the federal grand jury investigation. Thus, the policy of comity must yield to the constitutional right and duty of the federal grand jury to conduct a broad investigation. *Id.* 468 F.Supp. at 578.

Finally, the District Attorney contends that the motion to quash should be granted because the subpoenaed materials are privileged. Specifically, the District Attorney argues that the state grand jury secrecy law creates a federal privilege under Federal Rule of Evidence 501. The Court finds this argument without merit.

 Evidentiary privileges protect confidential communications between persons in special relationships from disclosure. By their very nature they impede the search for the truth and are therefore generally disfavored. *Trammel v. United States,* 445 U.S. 40, 50, 100 S.Ct. 906, 912, 63 L.Ed.2d 186 (1980); *Herbert v. Lando,* 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979); *United States v. Nixon,* 418 U.S. 683, 709–10, 94 S.Ct. 3090, 3108–09, 41 L.Ed.2d 1039 (1974). Accordingly, "the party asserting a privilege bears the burden of proving the applicability of the privilege," *In re Bevill, Bressler & Schulman Asset Management Corp.,* 805 F.2d 120, 126 (3d Cir.1986), and privileges, "whatever their origins ... [should] not [be] lightly created or expansively construed." *Nixon,* 418 U.S. at 710, 94 S.Ct. at 3109.

 When faced with a claim that a grand jury should be denied evidence because of privilege, the reviewing court must weigh the potential harm from disclosure against the benefits of disclosure. *American Civil Liberties Union of Miss., Inc. v. Finch,* 638 F.2d 1336, 1343 (5th Cir.1981). In this case, the federal grand jury is investigating possible violations of federal criminal civil rights laws by police officers of the Buffalo Police Department. As fully explained in the United States' *in camera* statement of facts, the subpoenaed documents are vital to the grand jury investigation and are not simply needed to assess credibility of potential witnesses. In addition, the information sought to be obtained from the subpoenaed material is not otherwise available since the police officers are unwilling to talk to the FBI. Thus, the grand jury may not be able to learn the truth of the allegations without the subpoenaed material.

On the other side of the scale, the potential harm from disclosure of the state grand jury material is minimal. Because Fed.R.Crim.P. 6(e) limits disclosure of federal grand jury material, the secrecy of the subpoenaed documents would be closely guarded. Thus, since the benefits of disclosure in this case substantially outweigh the potential harm from disclosure, the Court finds that the state grand jury records are not privileged as a matter of federal common law. *See Matter of Special April 1977 Grand Jury,* 581 F.2d at 592–93; *In re Grand Jury Proceeding,* 563 F.2d 577, 582–85 (3d Cir.1977); *In re Grand Jury Empaneled January 21, 1975,* 541 F.2d at 382–83.

In sum, the United States has a strong interest in ensuring the just enforcement of its criminal laws. Public policy has long favored giving the grand jury broad powers of investigation. The District Attorney, who has the burden of proving that the subpoena should be quashed, has failed to establish

that the subpoena is unreasonable or that it violates any recognized privilege. Furthermore, because of the secrecy provisions of the federal grand jury, little or no prejudice would result to the state from compliance with the federal grand jury subpoena.

## CONCLUSION

For the reasons stated, the Court denies the District Attorney's motion to quash the federal grand jury subpoena. This Decision and Order and the entire file are to be filed under seal.

It is so ordered.