**Brenda CLINE and Melissa Whitaker, Individually and as Personal Representatives of the Estate of LaKeesha Cline, Appellants,**

v.

**SPECTRUM CARE ACADEMY, INC., Appellee.**

Nos. 2008–CA–002329–MR, 2008–CA–002330–MR.

Court of Appeals of Kentucky.

July 2, 2010.

Stephen L. Hixson, Bowling Green, KY, for appellant.

Michael A. Goforth, London, KY, for appellee.

Before NICKELL and STUMBO, Judges; WHITE,[1] Senior Judge.

## OPINION

NICKELL, Judge:

Brenda Cline and Melissa Whitaker, both individually and as representatives of the Estate of LaKeesha Cline, appeal from orders entered by the Adair Circuit Court sealing the court record in two consolidated cases. For the reasons that follow, we reverse and remand for further proceedings and entry of an order consistent with this opinion.

This case results from the death of sixteen-year-old LaKeesha Cline after she fled from Spectrum Care Academy, Inc., a psychiatric residential treatment center for teenaged girls, and was struck and killed by two vehicles. The sole issue on appeal is whether the trial court properly sealed the record on Spectrum's motion. We hold it did not.

We begin with a brief statement of the facts. After being treated at Spectrum for bipolar disorder for eight months, LaKeesha's psychiatrist ordered her to be discharged in October of 2004. LaKeesha bid farewell to Spectrum staff and residents when unexpectedly, and without alerting LaKeesha's psychiatrist, Spectrum's clinical director, Brandy Hancock, cancelled her release.[2] LaKeesha contemplated suicide and three weeks later, after exiting her dormitory through a window under the cover of darkness, she intentionally ran in front of a car at a busy intersection. The driver narrowly missed hitting her.

LaKeesha asked to be hospitalized after the suicide attempt, but Hancock said she was just trying to get attention and returned her to Spectrum without contacting LaKeesha's psychiatrist. Her psychiatrist testified by deposition that had he learned of the suicide attempt, he would have admitted LaKeesha to a children's psychiatric hospital. Spectrum originally documented the incident as an attempted suicide by a runaway, but substituted new pages into the report to indicate LaKeesha had simply run away from the facility without incident and hospitalization was not required. The original pages of the report were destroyed. Two nights later, LaKeesha committed suicide when she again intentionally ran into traffic. This time she was struck by two vehicles and died of massive injuries on the highway in front of her Spectrum dormitory.

An investigation by the Cabinet for Health and Family Services concluded Spectrum was insufficiently staffed and could not provide the close supervision LaKeesha had required. Spectrum, however, characterized LaKeesha's death as an accident no one could have predicted.

Turning to the procedural history of the case, the Estate filed a wrongful death suit against Spectrum alleging negligence. After gathering more facts, the Estate filed a second wrongful death action around the one-year anniversary of LaKeesha's death. Named as defendants in the second complaint were Spectrum and its sister corporation, Assured Health Properties, Inc.; Hancock; and Ben Arnold, the sole owner

---

1. Senior Judge Edwin White sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

2. Hancock was paid a cash bonus for ensuring all Spectrum beds were filled with in-come-generating residents at all times. A significant amount of Spectrum's funding is received from Medicaid. The Estate alleged Hancock delayed LaKeesha's discharge on multiple occasions to avoid having an empty bed. Spectrum carries no liability insurance.

of Spectrum. The second complaint alleged negligence, conspiracy, fraud, conflict of interest, false imprisonment, violation of consumer protection statutes, and tampering with physical evidence. It also sought to pierce Spectrum's corporate veil and demanded both compensatory and punitive damages.

In the midst of the litigation, the Supreme Court of Kentucky granted the Estate's petition for a writ of mandamus on a consolidation issue. *Estate of Cline v. Weddle*, 250 S.W.3d 330 (Ky.2008). Thereafter, a mediated settlement was reached in the two actions in September of 2008 and the cases were dismissed with prejudice by agreed order of dismissal entered on October 21, 2008. The order[3] stated simply, "This matter is hereby dismissed with prejudice. Parties are to bear their own costs and fees. This is a final order."

On October 27, 2008, Spectrum moved to amend the order of dismissal to seal the record and prohibit access except upon court order. The motion stated it was being "made due to confidential and personal information contained within the file including information about residents/patients and employees and officers of Spectrum Care Academy, Inc." This was Spectrum's first mention of its desire for the court record to be sealed. No other defendants joined the motion. The Estate opposed sealing the record and sought sanctions against Spectrum and its attorney for filing a motion it believed "was made in bad faith, is frivolous, is unsupported by fact or law (or a good faith argument to extend, modify or reverse existing law), and was made to harass, cause unnecessary delay, or cause needless increase in the cost of litigation." The Estate moved the court to order Spectrum to reimburse the Estate in the amount of $3,987.40, a figure representing the cost of all expenses and legal fees incurred by the Estate in defending the motion to seal the court file.

At a hearing on November 25, 2008, Spectrum alleged the record should be sealed because it contained financial records sought by the Estate in its attempt to pierce Spectrum's corporate veil, discussion of an employee's salary and bonus structure, resident names and employee information that should not be "available just for the public." After asking counsel for the Estate why he would object to the file being sealed, the trial court interrupted his response saying he was familiar with the procedural history of the case and, "I've got a big docket today, Mr. Hixson. Why do you object to these records of this company being sealed?" Counsel responded that while judicial records are not subject to the open records act, everyone "in Adair and surrounding counties has the right under the constitution and the laws of the United States and the Commonwealth of Kentucky to see these public records," to which the trial court stated in relevant part,

> So somebody has called the newspaper and they've come in and copied the file. But the information that Mr. Goforth has spoken about here, I see no reason why that shouldn't be closed to the general public. I've read your motions, and I'm going to sustain [the motion to seal the record].

When counsel for the Estate asked to be heard, the trial court told him, "[s]ubmit it in writing, please." Additional requests by the Estate's attorney to be heard were refused by the trial court who ultimately stated, "I said submit it in writing or take it up to the higher court and reverse me again. You go right ahead and do what you want to do.... I've heard all I'm

---

3. Identical orders were entered in both case    numbers.

going to hear. Thank you." The entire proceeding lasted less than four minutes.

That same day, November 25, 2008, an "Order Amending Order of Dismissal" was signed and entered by the court stating:

This matter came on for hearing pursuant to motion of defendant Spectrum Care Academy, Inc., to amend order of dismissal entered herein on October 21, 2008 to add provisions providing for sealing of this record, the Court being sufficiently advised orders as follows:

The motion of defendant, Spectrum Care Academy, Inc., to seal this court record is hereby SUSTAINED. No access shall be permitted to this file without court order. This is a final order.

The following day, November 26, 2008, the trial court signed an order stating it had granted Spectrum's motion to seal the record and for the first time explained the rationale for its action:

[t]his was done due to personal and confidential information in the court record including: copies of financial documents which include income tax returns; employee personnel file information which includes income information of certain employees; and names of other patients/residents. This Court has the authority to seal the record where there are interests favoring nondisclosure of court file materials. A court may deny access to its records and documents to ensure that records are not used to satisfy private spite, promote public scandal or to serve as a(sic) reservoirs of libelous statements for press consumption. *Roman Catholic Diocese of Lexington v. Noble*, 92 S.W.3d 724, 730–731, 734 (Ky.2002). The Court has been advised by court personnel that subsequent to motion of defendant Spectrum to seal this record, one or more newspaper representatives have made copies of materials in this file. The Court further

notes that a confidential settlement agreement was reached by the parties. All of the above makes it appropriate that this court record be sealed at this time, and so plaintiffs' motions for sanctions against the defendant Spectrum and its counsel for seeking sealing of the record are overruled. This is a final order.

While this order was signed in November, it was not entered by the Adair Circuit Court Clerk until December 16, 2008, several days *after* the Estate had filed a notice of appeal on December 9, 2008. The Estate then moved the trial court to set aside the December 16 order due to its having lost jurisdiction when the appeal to this Court was filed. On January 5, 2009, the *Lexington Herald–Leader* filed motions to intervene in the case to contest the sealing of the record and to unseal the record.

At a hearing on January 13, 2009, counsel for the Estate asked the court to remand its motions to access the record to prepare its appellate brief and to set aside the December 16 order because the trial court had lost jurisdiction due to the Estate's filing of a Notice of Appeal. Citing *Young v. Richardson*, 267 S.W.3d 690 (Ky. App.2008), the trial court found it lacked jurisdiction to entertain the Estate's motions and remanded them, concluding the "order entered December 16, 2008 is a nullity because the matter was on appeal when the order was entered." Because the case was before the Court of Appeals, the trial court also denied the *Herald–Leader's* motions to intervene and to unseal the record. This appeal, solely between the Estate and Spectrum, followed.

■ The narrow question before us is whether the trial court erred in sealing the record. At the outset we admit there is little settled law on this precise issue and the trial court has asked for guidance.

"[J]udicial documents are presumptively available to the public, but may be sealed if the right to access is outweighed by the interests favoring nondisclosure." *United States v. McVeigh*, 119 F.3d 806, 811 (10th Cir.1997), *cert. denied sub nom Dallas Morning News v. U.S.*, 522 U.S. 1142, 118 S.Ct. 1110, 140 L.Ed.2d 163 (1998) (citing *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 602, 98 S.Ct. 1306, 1314, 55 L.Ed.2d 570, 582 (1978) (wherein Supreme Court of United States recognized public's general right to inspect and copy records, including judicial records)). Kentucky courts, and the Sixth Circuit Court of Appeals, have also recognized the public's right to inspect and copy court records and documents. *Courier–Journal and Louisville Times Co. v. Peers*, 747 S.W.2d 125, 128 (Ky.1988); *Brown & Williamson Tobacco Corp. v. Federal Trade Commission*, 710 F.2d 1165, 1176–77 (6th Cir.1983), *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1595, 80 L.Ed.2d 127 (1984). "The balancing test between a court's inherent right to control access and the public's presumptive right of access is 'left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case.' " *Noble*, 92 S.W.3d at 731 (quoting *Warner Communications*, 435 U.S. at 599, 98 S.Ct. at 1312–13, 55 L.Ed.2d at 580).

■ Kentucky courts utilize a sliding scale to determine how much presumptive weight of access should be given to a record or piece of evidence. *Noble*, 92 S.W.3d at 731–32 (analyzing *United States v. Amodeo*, 71 F.3d 1044, 1048 (2nd Cir.1995)). Documents used to determine a litigant's substantive rights receive the greatest weight and can be sealed only for the "most compelling" of reasons while documents having little bearing on a litigant's rights receive little weight. *Noble*, 92 S.W.3d at 732 (citations omitted). The sliding scale is an imperfect fit in this instance since the underlying causes of action were settled via mediation.

■ Before sealing any part of a trial court record, a court must first convene a hearing at which the party asking that the record be sealed bears the burden of proving sealing the record is necessary. *Warner Communications*; *Peers*; *Lexington Herald–Leader Co., Inc. v. Meigs*, 660 S.W.2d 658, 661 (Ky.1983). In the case *sub judice*, the trial court convened a hearing; appeared to erroneously place the burden on the Estate to prove that sealing the record was improper, but then refused to allow counsel for the Estate to be heard; and made no findings of fact before granting Spectrum's request to seal the record. The trial court attempted to provide the basis for its action, but only after the trial court had lost jurisdiction due to the Estate's filing of its notice of appeal. *Young*. Therefore, we will not consider the order entered on December 16, 2008.

Based upon the authority previously cited in this opinion, we reverse the trial court's sealing of the record and remand the matter for further proceedings and entry of an opinion consistent with this opinion. The trial court is directed to convene a hearing at which Spectrum shall be required to prove sealing the entire court record is necessary. To satisfy its burden, Spectrum shall identify and eliminate less onerous alternatives such as redaction, use of initials, and the sealing of individual documents as opposed to the entire record. Thereafter, counsel for the Estate shall be afforded ample opportunity to argue its position and to refute claims advanced by Spectrum before the trial court makes written findings of fact and

conclusions of law either granting or denying the motion to seal the record or specified parts thereof.

For the foregoing reasons, the orders sealing the records in Adair Circuit Court Civil Actions No. 05–CI–00120 and 05–CI–00252 are reversed and remanded for proceedings consistent with this opinion.

ALL CONCUR.