RENDERED: AUGUST 9, 2024; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NOS. 2023-CA-1103-MR & 2023-CA-1140-MR

COMMONWEALTH OF KENTUCKY,
EX REL. ATTORNEY GENERAL
RUSSELL COLEMAN                                                                APPELLANT

                          APPEAL FROM FRANKLIN CIRCUIT COURT
v.                        HONORABLE PHILLIP J. SHEPHERD, JUDGE
                          ACTION NO. 23-CI-00680

JANE DOE 1; JANE DOE 2;
AND JOHN ROE                                                                   APPELLEES

OPINION AFFIRMING ON APPEAL 2023-CA-1103-MR
AND VACATING AND REMANDING ON APPEAL 2023-CA-1140-MR

** ** ** ** **

BEFORE: ACREE, EASTON, AND GOODWINE, JUDGES.

EASTON, JUDGE: The Commonwealth filed two appeals regarding the Franklin

Circuit Court's Orders of September 18, 2023, and September 27, 2023.

Recognizing that the impetus for this case was by the actions of a former attorney

general, rather than the current occupant of that office, we will refer to the Appellant as "OAG" for Office of the Attorney General.

In the first appeal (No. 2023-CA-1103-MR), the OAG questions an order quashing a grand jury subpoena seeking employment records from Roe LLC of two of its employees ("Jane Doe 1" and "Jane Doe 2" who we will refer to collectively as the "Does"). The circuit court determined that the OAG lacked authority to conduct the specific criminal investigation of which the subpoena was part. The circuit court additionally concluded that, even if there was a valid basis for the investigation, Franklin County was not the appropriate venue, as all alleged acts occurred in another county. The second appeal (No. 2023-CA-1140-MR) involves the circuit court's order to unseal parts of the record of the case which had been sealed previously in its entirety. We have consolidated the appeals and address both in this Opinion.

After an extensive review of the record, the parties' briefs, oral argument, and for the detailed reasons which follow, we affirm on appeal No. 2023-CA-1103-MR. We vacate on appeal No. 2023-CA-1140-MR and remand to the circuit court with directions to conduct a hearing on sealing the record to include consideration of how this Court has addressed this case.

## FACTUAL AND PROCEDURAL HISTORY

This case arises from an investigation by the OAG. This investigation relates to the employment of the Does, both employed by Roe LLC. At the same time and in the same county, the Does had another employer. This other employer receives some of its general funding (much less than a majority) from the Commonwealth. The OAG's focus for this investigation is potential "'violations of the criminal and penal laws arising out of, involving or in connection with state funds' paid for 'services . . . to the Commonwealth or any of its political subdivisions.'"[1]

In June 2023, the OAG issued a grand jury subpoena under the auspices of the Franklin County Grand Jury. The subpoena was directed to John Roe ("Roe"), a member of Roe LLC. This subpoena sought "any and all records on [the Does] including but limited [sic] to personnel files, employment agreements, job descriptions, compensation agreements, payroll records, copies of W-2 or 1099's, all time & attendance information from hire date through 2022, [and] insurance policies held by [Roe LLC] for these employees."[2] The OAG sought to compare the employees' records for evidence that unspecified and

---

[1] Appellant's Brief, Page 1.

[2] *Id.*

indirect state funds paid to these employees may have been related to some malfeasance connected with their work.

In July 2023, Roe and the Does moved the Franklin Circuit Court to quash the subpoena, claiming the documents sought are not relevant to any potential criminal charges and that requiring their production would be unreasonable and oppressive. They also moved to seal the record. The OAG agreed that the record should be sealed.

The circuit court heard oral arguments on the motion to quash on September 1, 2023. It granted the motion to quash, holding that "the Attorney General has no jurisdiction over this matter, and venue is not authorized in Franklin County."[3] The circuit court held the subpoena was unreasonable and oppressive under RCr[4] 7.02. On September 27, 2023, which was after the first notice of appeal had been filed, the circuit court entered an additional order which unsealed a portion of the record. The OAG then made an emergency motion to this Court, asking for an order that the case remain sealed pending an opinion on the merits of the appeals, which was granted.

---

[3] Circuit Court's Order, September 18, 2023, Page 15; Trial Record ("TR") 76.

[4] Kentucky Rules of Criminal Procedure.

**ANALYSIS**
**No. 2023-CA-1140-MR**

We choose to address the question of sealing the record first because this will dictate how we address the issues presented in this Opinion, which will be made public. In doing so, we must resolve a tension between necessary secrecy of grand jury proceedings and the right of the public to know what its government is doing, which is served by access to court records. We conclude that the public issuance of this Opinion with appropriate pseudonyms for most participants will achieve the proper balance. Our decision will then call for a reassessment by the circuit court of sealing all or any part of its record. All of this Court's record except for this Opinion will remain sealed recognizing the authority of the circuit court to first decide what, if any, further information should be made public.

"From earliest times it has been the policy of the law in furtherance of justice to shield the proceedings of grand juries from public scrutiny. Secrecy is for the protection of the witnesses and the good names of innocent persons investigated but not indicted and is to inspire the grand jurors with a confidence of secrecy in the discharge of their duties." *Greenwell v. Commonwealth*, 317 S.W.2d 859, 861 (Ky. 1958). As the OAG points out, this secrecy also prevents interference by those who learn of an investigation and seek to frustrate a legitimate investigation. This secrecy is not a constitutional guarantee but rather a

strong public policy presently embodied in RCr 5.24.  *Maze v. Judicial Conduct Commission*, 612 S.W.3d 793, 805-06 (Ky. 2020).

On the other side of the scales is public policy favoring transparency in government.  Courts specifically are subject to constitutional guaranties of "open" courts.  KY. CONST. § 11 (public trial of criminal charges) and KY. CONST. § 14 ("All courts shall be open . . . .").  Court records are presumed to be open to public inspection, and the law requires compelling reasons to seal records.  *Cline v. Spectrum Care Academy, Inc.*, 316 S.W.3d 320, 325 (Ky. App. 2010).  This is so even if all the parties want the records to be sealed.  *See Fiorella v. Paxton Media Group, LLC*, 424 S.W.3d 433 (Ky. App. 2014).

United States Supreme Court Justice Brandeis, a Louisvillian, counseled us:  "Publicity is justly commended as a remedy for social and industrial diseases.  Sunlight is said to be the best of disinfectants; electric light the most efficient policeman."[5]  Or as Patrick Henry said:  "The liberties of a people never were, nor ever will be, secure, when the transactions of their rulers may be concealed from them."[6]

---

[5] LOUIS D. BRANDEIS, OTHER PEOPLE'S MONEY AND HOW THE BANKERS USE IT 92 (1914).

[6] Patrick Henry, Speech on the Federal Constitution, Virginia Ratifying Convention (June 9, 1788), *in* THE DEBATES IN THE SEVERAL STATE CONVENTIONS ON THE ADOPTION OF THE FEDERAL CONSTITUTION:  VOLUME 3, 170 (Jonathan Elliot ed., 1836).

The approach of the circuit court was to release certain information within the record. This inevitably runs some risk of the damage an unnecessary disclosure of too much detail about a grand jury investigation may cause. It could also bring publicity and cause harm to people who have committed no crime. We intend to shine light on the legal process without adding unnecessary risk to the people investigated, who may yet be investigated regardless of the outcome of this appeal. We will be able to explain the general details sufficiently to justify the legal conclusions reached and let the public know what its government is doing without unnecessary risk to future grand jury proceedings.

The decision of the circuit court to unseal portions of the file was made after the first appeal was filed. While it is within the discretion of the circuit court to decide the question of sealing the record or any part of it, there is a question of jurisdiction for the circuit court to have acted after the first appeal was filed. *Cline*, *supra*. Because we have kept the record sealed pending this decision, we will vacate the order entered by the circuit court regarding sealing of the record and remand this issue to the circuit court for further consideration. Until the circuit court makes that decision, the circuit court record will remain sealed pursuant to our previous order.

The OAG argues the circuit court made several errors in granting the motion to quash the subpoena. It claims first that the Does lack standing to challenge the subpoena. The OAG also claims the circuit court erred in its conclusion that the OAG had no legal authority to issue the subpoena. Finally, the OAG insists that Franklin County is a proper venue for the investigation. We will address these purported errors one at a time.

## I. The Does Have Standing to Challenge the Subpoena

The circuit court ruled that the Does have standing to challenge the subpoena. In its brief, the OAG asks this Court to reverse that ruling and to dismiss them as parties. Standing is a question of law and is reviewed *de novo*. *Tax Ease Lien Investments 1, LLC v. Commonwealth Bank & Trust*, 384 S.W.3d 141, 143 (Ky. 2012).

The OAG argues that the Does lack standing to quash the subpoena because the subpoena was directed to Roe LLC, a corporate entity which is just an employer for the individual Does and in which the individual Does have no ownership interest. The subpoena only sought employment information about employees.

"To have standing to sue in Kentucky, the basic rule is that the person

must have a 'judicially recognizable interest in the subject matter of the suit.'" *Commonwealth ex rel. Beshear v. Commonwealth Off. of the Governor ex rel. Bevin*, 498 S.W.3d 355, 361 (Ky. 2016) (citing *Ashland v. Ashland FOP No. 3*, 888 S.W.2d 667, 668 (Ky. 1994)). In *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992), the United States Supreme Court established the following three requirements for standing: (1) injury, (2) causation, and (3) redressability. Kentucky adopted these requirements in *Commonwealth Cabinet for Health & Family Services, Department for Medicaid Services v. Sexton By & Through Appalachian Regional Healthcare, Inc.*, 566 S.W.3d 185 (Ky. 2018).

The first requirement for standing is that the plaintiff must have suffered an injury-in-fact. *Lujan*, *supra*, at 560. A plaintiff must demonstrate he or she has suffered a concrete and particularized injury that is either actual or imminent. *Sexton*, *supra*, at 196. This injury must be "distinct and palpable," and not "abstract" or "conjectural" or "hypothetical." *Id.* As for the last two requirements of causation and redressability, "[t]he injury must be 'fairly' traceable to the challenged action, and relief from the injury must be 'likely' to follow from a favorable decision." *Allen v. Wright*, 468 U.S. 737, 751, 104 S. Ct. 3315, 3324, 82 L. Ed. 2d 556 (1984), *abrogated on other grounds by Lexmark*

*International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 S. Ct. 1377, 188 L. Ed. 2d 392 (2014).

The Commonwealth argues *Bishop v. Caudill*, 87 S.W.3d 1 (Ky. 2002), is controlling.  In *Bishop*, the Kentucky Supreme Court recognized that criminal defendants *generally* do not have standing to inquire into grand jury investigations, but only "[s]o long as it is not the sole or dominant purpose of the grand jury to discover facts relating to [a defendant's] pending indictment." *Id.* at 4.  In other words, prosecutors cannot use the grand jury to investigate defenses raised by an indicted criminal defendant.  Pretrial and trial processes serve that purpose.

Throughout this case, the OAG relies upon the distinction between investigative power and prosecution of cases after charges have been brought.  The OAG believes its investigative power is much broader than its power to prosecute charges.  We should keep that distinction in mind when we consider the application of *Bishop*.  In the present case, we are dealing with potential criminal defendants against whom no charges have been brought, unlike the defendant in *Bishop*.

The circuit court relied upon the right of third parties to quash grand jury subpoenas directed to others, which has been repeatedly upheld, citing *In re Grand Jury*, 111 F.3d 1066, 1073-74 (3d Cir. 1997).  "It is well-established that a

litigant may have sufficiently important, legally-cognizable interests in the materials or testimony sought by a grand jury subpoena issued to another person to give the litigant standing to challenge the validity of that subpoena." *Id.* at 1073. *See also Gravel v. United States*, 408 U.S. 606, 92 S. Ct. 2614, 33 L. Ed. 2d 583 (1972) (United States Senator allowed to move to intervene and quash subpoena directed to his assistant). "A party has standing to move to quash a subpoena addressed to another if the subpoena infringes upon the movant's legitimate interests." *United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982). The law recognizes a citizen's right to privacy, and a subpoena for records may become unreasonable in violation of the Fourth Amendment. *See United States v. Calandra*, 414 U.S. 338, 346, 94 S. Ct. 613, 619, 38 L. Ed. 2d 561 (1974).

We agree with the circuit court that the Does had standing to bring this action with Roe on behalf of Roe LLC. The OAG is seeking information related to the Does' personal financial and tax information, which is not generally available to the public. There is no other way for the Does to address this potential invasion of their privacy other than to attempt to quash the subpoena addressed to one of their employers. The circuit court did not err in finding the Does had standing.

Even if the OAG was correct in its standing argument as to the Does, Roe on behalf of Roe LLC, to whom the subpoena was directed, certainly had

standing.  The OAG demanded that Roe LLC produce its records, and it may

object to any improper purpose of a subpoena directed to it.  Because, at a

minimum, at least one party in this action had standing to challenge the subpoena,

it was appropriate for the circuit court to proceed and now for this Court to

continue its review.  *See Commonwealth ex rel. Beshear*, *supra*, at 369.

## II.    The Authority of the OAG

We sometimes hear about a "unified" prosecutorial system in

Kentucky.  The use of the word "unified" may be misleading.  What we actually

have is a cooperative system among prosecutors who are all constitutional officers

of the Commonwealth.  Local prosecutors, elected by their respective

communities, "do not answer to the Attorney General."  *Couch v. Commonwealth*,

686 S.W.3d 172, 179 (Ky. 2024).

Section 91 of the Kentucky Constitution establishes the OAG.  His or

her duties "shall be such as may be prescribed by law[.]"  In 1936, our state

government went through a thorough reorganization.  The OAG lost a challenge to

the limitations enacted as part of this reorganization.  *Johnson v. Commonwealth

ex rel. Meredith*, 165 S.W.2d 820 (Ky. 1942) (the use of the word "prescribed"

gives the legislative branch the power to define what the OAG can and cannot do

so long as the legislature does not effectively eliminate the office).  As part of this

initial reorganization, the Department of Law was created. Current statutes on the authority of the OAG are now found primarily in KRS Chapter 15.

"The Attorney General is the head of the Department of Law." KRS 15.010(1). He or she serves as the "chief law officer" for the Commonwealth and its numerous departments and agencies. KRS 15.020(1). In a civil capacity, the OAG may participate in suits to defend the provisions of our Constitution. *Commonwealth ex rel. Hancock v. Paxton*, 516 S.W.2d 865, 867 (Ky. 1974). We also find in the statutes the titles of "chief law enforcement officer" and "chief prosecutor of the Commonwealth." KRS 15.700. The OAG has many obligations in both civil and criminal matters.

When it comes to criminal cases, the OAG may assist when requested to do so by local prosecutors in "any criminal investigation or proceeding." KRS 15.190. This authority indicates the cooperative nature of the system. KRS 15.700. Other designated people, such as a mayor or sheriff, may also invite the OAG to investigate and prosecute crimes. KRS 15.200(1); *Matthews v. Pound*, 403 S.W.2d 7 (Ky. 1966). In these situations, the OAG may do what the local prosecutor may do, including issuing subpoenas. KRS 15.210. But the OAG may not deprive the local prosecutors of their authority, which includes their prosecutorial discretion. KRS 15.220; KRS 15.745.

In the specific context of criminal prosecution, the General Assembly gave the OAG independent authority over certain types of cases. For example, the OAG may prosecute cases involving identity theft. KRS 15.231. *See also Commonwealth v. Johnson*, 423 S.W.3d 718 (Ky. 2014) (statute within KRS Chapter 218A gave the OAG authority to investigate and prosecute drug related crimes).

The OAG argues that the subpoena in question here was authorized by another specific grant of authority – prosecution of those who receive improper payment from the state treasury. KRS 15.715(6) provides:

> The Attorney General shall have the duty, within the Forty-eighth Judicial Circuit, to prosecute any person who receives compensation from the Treasury of the Commonwealth of Kentucky for all violations of the criminal and penal laws arising out of, involving or in connection with state funds, or the sale or transfer of goods or services by or to the Commonwealth or any of its political subdivisions; and specifically including, but not limited to, all violations set forth in KRS Chapters 521 and 522. Nothing herein shall be construed to change the venue provision presently existing under Kentucky law as of July 15, 1980.

### III. The Circuit Court Did Not Abuse its Discretion in Quashing the Subpoena

With KRS 15.715(6) in mind, we need to give some further explanation of the issues being investigated. Basically, the idea is that the Does were being paid by their other employer while at the same time being paid by Roe

LLC. The work done by the Does intersected between their two employers. Whether denominated as theft or some other malfeasance with funds, the investigation sought evidence about payments made by the other employer which could have somehow improperly overlapped with payments made by Roe LLC.

The other employer has at least a budgetary connection with the Commonwealth, but it is not a "political subdivision" of the Commonwealth as contemplated by KRS 15.715(6). While other sources make up a large majority of the other employer's budget, we may say as a hypothetical that state funds could be up to 15% of the other employer's total revenue. The OAG then reasons that any payments to the Does from the other employer are at least partially indirect payments from the state treasury. The OAG felt this connection could lead to a crime relating to payments made from the state treasury, and the OAG has authority in Franklin County to at least investigate such a crime under KRS 15.715(6).

Taking the Commonwealth's position at face value, to read KRS 15.715(6) to allow the OAG investigative authority for criminal charges under the specific facts of this case would be more than a stretch of this statute. The statute does not use the word direct nor the word indirect, but it does require a payment "from the treasury." As the circuit court pointed out with citation to many cases, this statute deals only with direct payments from the treasury in Frankfort.

-15-

> Franklin County is the seat of government and the place of payments from the State Treasury. It is not illogical, arbitrary or unreasonable to authorize prosecution at this location for offenses involving payments of state funds. The Attorney General is an appropriate officer to investigate and prosecute any person who wrongfully receives compensation from the state treasury for violations of the criminal laws of this state involving state funds along with certain other offenses enumerated within the statute.

*Graham v. Mills*, 694 S.W.2d 698, 700 (Ky. 1985).

The OAG provides examples of cases from Franklin County to support the OAG's authority to bring a case in Franklin County although the questionable conduct occurred outside of Franklin County. For example, the OAG cites *Hodges v. Commonwealth*, 614 S.W.2d 702 (Ky. App. 1981) and *Evans v. Commonwealth*, 645 S.W.2d 346 (Ky. 1982). But the cases the OAG references are distinguishable from the circumstances of this case. The indictments returned by the Franklin County Grand Jury addressed in these cases refer to crimes where funds from the state treasury were paid *directly to* the defendants in question from the treasury in Frankfort, whether in the form of benefits, grants, or compensation.

*Hodges* dealt with a deputy sheriff who made claims for mileage and expenses, which were sent to and paid by the treasury. *Hodges*, *supra*, at 703. Evans was a physician who committed fraud in order to obtain Medicaid benefits from an allocation of funds directly financed through the treasury. *Evans*, *supra*.

-16-

That is not the case for the Does. The Does do not receive any funds directly from the treasury. They are employees, and their employers, not the Commonwealth, are responsible for their paychecks. Those paychecks are not issued from the state treasury. Simply because an employer receives some small percentage of funding from the Commonwealth does not mean the OAG can investigate payments by that employer which have only some theoretical and indirect connection to state funding.

We again note the cooperative nature of our prosecutorial system. No one in the county where the Does work asked the OAG to assist in investigating some crime in that other county. The OAG's reading of the statute disregards the final sentence of the governing statute, which clearly states "[n]othing herein shall be construed to change the venue provision[s] presently existing under Kentucky law as of July 15, 1980." KRS 15.715(6). If the General Assembly intended the statute to be read as the OAG asserts, this final sentence would have been unnecessary.

We will not engage in a "parade of horribles" should the interpretation of KRS 15.715(6) of the OAG be accepted, but we will suggest one entry in such a parade. State funds are used to pay for roads. One budgeted project is for roads outside Franklin County. A contractor wins a competitive bid to work on the roads. The contractor receives payments with a direct connection to the state

treasury. One of many subcontractors is paid by the contractor and then with what he received from the contractor the subcontractor commits a crime by using his pay to engage in a crime where he lives. The subcontractor might have diverted funds owed to his own subcontractors. Would the OAG come in uninvited to investigate or prosecute such a case rather than allow local prosecutors to deal with the matter under the criminal law entrusted to those local officials for prosecution? We cannot read KRS 15.715(6) so broadly. We cannot see how KRS 15.715(6) applies just because some indirect connection to state funds can possibly be shown.

This was part of the reasoning of the circuit court. The OAG was actually looking into theft or some similar crime in another county. The record contains no indication that either of the two employers claimed any improper activity by the Does. The local prosecutors did not look into such charges and did not invite the OAG to come in.

We cannot find actual support for the proposition that the general authority of the OAG means that this office may be used to investigate or prosecute any potential connection to funds provided by or regulated by the state. To the contrary, we suggest an analogy to *Commonwealth ex rel. Ferguson v. Gardner*, 327 S.W.2d 947 (Ky. 1959). The OAG may supervise administration of charitable trusts. This did not give the OAG authority to intervene in a will contest case because funds may go to such a trust. Similarly, our legislature did not clearly

-18-

indicate an intention to give the OAG authority to initiate any potential criminal investigation because some indirect connection to state funding might be shown. This would be contrary to every published and unpublished case in which KRS 15.715(6) has been applied. The statute has been consistently interpreted to require a more direct payment from the treasury.

Even if the OAG was correct or only arguably mistaken in its use of KRS 15.715(6), we recognize the careful division of the powers among the legislative, judicial, and executive (of which the OAG is part) branches of our government as demanded by KY. CONST. § 28. When the OAG issues a subpoena, it utilizes the judicial branch. The judicial branch has authority to regulate the use of subpoenas and specifically has the authority to quash them when "compliance would be unreasonable or oppressive." RCr 7.02(3). This rule mirrors federal rules on the subject. FRCRP[7] 17(c)(2). Neither the federal nor state rule excludes grand jury subpoenas from its coverage.

"[M]otions to quash subpoenas are subject to the trial court's sound discretion and will be reversed on appeal only for abuse of that discretion." *Commonwealth v. House*, 295 S.W.3d 825, 828 (Ky. 2009). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair,

---

[7] Federal Rules of Criminal Procedure.

or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). However, "[s]tatutory construction is a matter of law which requires de novo review." *Commonwealth v. Johnson*, 423 S.W.3d 718, 720 (Ky. 2014).

Having considered the argument that the OAG advanced under KRS 15.715(6), the circuit court believed the subpoena issued to Roe LLC was a "fishing expedition" of the kind condemned in *Commonwealth v. House*, 295 S.W.3d 825, 828 (Ky. 2009).[8] The circuit court reached this conclusion in part due to the fact that the records sought in the subpoena were the same records sought but denied in a previously filed civil case that had been dismissed. We find further support for the discretion exercised by the circuit court from federal authorities.

The United States Supreme Court has determined "[t]he grand jury occupies a unique role in our criminal justice system. It is an investigatory body charged with the responsibility of determining whether or not a crime has been committed. Unlike this Court, whose jurisdiction is predicated on a specific case or controversy, the grand jury can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 297, 111 S. Ct. 722, 726, 112 L. Ed. 2d 795 (1991) (internal quotation marks and citations omitted). However, "[t]he

---

[8] Circuit Court Order, September 18, 2023, pages 14-15; TR 75-76.

investigatory powers of the grand jury are nevertheless not unlimited. Grand juries are not licensed to engage in arbitrary fishing expeditions, nor may they select targets of investigation out of malice or an intent to harass." *Id.* at 299, 111 S. Ct. at 727 (citations omitted).

Both the Kentucky rule and the federal rule grant a court authority to quash a subpoena if it determines it is unreasonable or oppressive. In order to show compliance with a subpoena would be unreasonable or oppressive it must be shown "(1) there is no reasonable possibility that the category of materials the Government seeks will produce information relevant to the general subject of the grand jury's investigation; or (2) the subpoena is too indefinite; or (3) compliance would be overly burdensome." *Matter of Dillon*, 824 F. Supp. 330, 333 (W.D.N.Y. 1992) (internal quotation marks omitted).

The circuit court here found that the subpoena issued was unreasonable, because there was no "allegation that state funds were used directly in any manner that would violate the penal code"[9] and that the Commonwealth provided no "citation to legal precedent that would support the theory that a crime may have been committed that is related to the personal and tax information sought[.]"[10] The circuit court's conclusion meets the Supreme Court's standard,

---

[9] Circuit Court's Order, September 18, 2023, page 14; TR 75.

[10] *Id.*

which is "the motion to quash must be denied unless the district court determines that there is no reasonable possibility that the category of materials the Government seeks will produce information relevant to the general subject of the grand jury's investigation." *R. Enterprises, Inc.*, *supra*, at 301, 111 S. Ct. at 728.

This first criterion necessarily assumes the general subject matter of the grand jury's investigation is within the proper scope of that grand jury – to investigate potential crimes which may be prosecuted in that jurisdiction. Venue still matters, as KRS 15.715(6) plainly states. In the circumstances of this case, the circuit court committed no legal error and did not abuse its discretion in quashing what it determined to be an unreasonable subpoena.

While we do not wish to overuse the hackneyed phrase of a "fishing expedition," we reiterate that the OAG was fishing in the wrong pond. The Does live and work outside of Franklin County. Both of their employers are outside of Franklin County, and their paychecks are not issued from the state treasury; they are issued by employers outside of Franklin County. There is simply no sufficient nexus that can justify a Franklin County Grand Jury issuing subpoenas for the criminal investigation by the OAG under the circumstances of this case.

**CONCLUSION**

On Appeal No. 2023-CA-1103-MR, we affirm the Franklin Circuit Court's order quashing the subpoena in question. On Appeal No. 2023-CA-1140-

-22-

MR, we vacate the Franklin Circuit Court's order which unseals part of the record, and we remand to the circuit court for further proceedings on the sealing of the record.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Office of the Attorney General
Frankfort, Kentucky

ORAL ARGUMENT FOR
APPELLANT:

Elizabeth Hedges
Frankfort, Kentucky

BRIEF FOR APPELLEE DOE 1:

Kent Wicker
William H. Brammell, Jr.
Louisville, Kentucky

BRIEF FOR APPELLEE DOE 2:

Tricia F. Lister
Louisville, Kentucky

BRIEF FOR APPELLEE ROE:

Patrick J. Renn
Louisville, Kentucky

ORAL ARGUMENTS FOR
APPELLEES:

William H. Brammell, Jr.
Louisville, Kentucky